[Crim. No. 562. Fourth Dist. Jan. 24, 1945.]

THE PEOPLE, Respondent, v. CARL G. SAUER, Appellant.

Carl G. Sauer, in pro. per., for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, James M. Theusen, District Attorney, and Harold V. Thompson, Deputy District Attorney, for Respondent.

BARNARD, P. J.—In an information filed on May 18, 1942, the defendant was charged with the crime of forgery in that he signed another man's name to a check payable to himself and cashed the check. On June 3, 1942, he appeared in court with his counsel for the purpose of arraignment. He pleaded not guilty and the setting of the trial was continued to June 8, 1942.

On June 15, 1942, he came into court with his counsel and

at his request he was permitted to withdraw his plea of not guilty whereupon he entered a plea of guilty. He waived time for judgment and, after some considerable investigation of the surrounding circumstances, a judgment was entered sentencing him to imprisonment at San Quentin, where he has since been confined.

Under date of April 29, 1944, the defendant filed notice of motions to amend and correct the record, to annul, vacate and set aside the judgment, and to permit him to withdraw his plea of guilty, noticing the same for May 12, 1944, together with an application and motion for an order to produce the defendant at the time of hearing of the other motions. On May 3, 1944, an order was made directing that the defendant be produced in court on May 12, 1944, for the purpose of presenting any evidence he desired in support of his motions, and directing the sheriff to bring the defendant to court on that date. For some reason which does not appear the defendant was not produced in court on May 12, 1944, but on that day certain evidence was taken and an order was entered denying all of the motions made by the defendant. Under date of May 19, 1944, the defendant gave written notice of appeal from the order entered on May 12, 1944, and on the same day he applied for a clerk's and reporter's transcripts and asked for certain things as "additional record," including several matters which had and could have no possible bearing on the appeal taken.

On June 10, 1944, the defendant filed an objection to the transcript on appeal which had been filed, claiming that it did not contain all of the matters which he had requested, and also filed notice of a motion to be heard on July 11, 1944, for an order vacating and setting aside the order of May 12, 1944, on the ground that it was void on its face for want of jurisdiction. The hearing on these matters was continued to August 3, 1944.

On August 3, 1944, the court entered an order vacating and setting aside its order of May 12, 1944, setting the various motions of the defendant for correction of the record, to vacate and set aside the judgment and to permit him to withdraw his plea of guilty for hearing on August 17, 1944, and again directing the sheriff to produce the defendant in court at that time.

The defendant was produced in court on August 17, 1944, whereupon he was asked if he desired the services of an at-

torney. He stated that he did not, and the hearing proceeded. He called two witnesses, read into the record the transcript of the proceedings at the time he was originally sentenced and made a lengthy argument. The matter was submitted and an order was entered denying his motion to set aside and vacate the judgment. From this order the present appeal was taken.

Appellant's first contention is that judgment was pronounced against him on June 15, 1942, without substantial compliance with the requirements of section 1200 of the Penal Code in that he was not immediately, before judgment was pronounced, informed of the nature of the information filed against him, of his arraignment and plea of guilty; that the clerk's transcript erroneously shows that this was done; and that the court should have ordered these minutes corrected and should have set aside the judgment as entered and should have proceeded then to properly arraign him for sentence. The clerk's minutes of the proceedings on June 15, 1942, show that the appellant was properly arraigned for judgment after his plea was changed and he had entered a plea of guilty. The appellant now insists that these minutes are not correct but no evidence was introduced other than a reporter's transcript of what took place at the time the plea was changed and judgment was pronounced on June 15, 1942. That transcript shows that on that occasion the appellant came into court with his then attorney and with the assistant district attorney representing the People. Appellant's attorney informed the court that they would like to withdraw his plea of not guilty and enter a plea of guilty. The court asked the appellant personally whether this statement was correct and whether he desired to do this. The defendant replied that he did. The court then granted permission to do so and announced that the former plea was withdrawn. The court then informed the defendant that he then stood charged with the crime of forgery alleged to have been committed by him on or about April 25, 1942, and asked if they were ready to plead to that charge. On receiving an affirmative reply from the attorney the court asked the appellant whether he was guilty or not guilty. The appellant replied: "Guilty." Appellant's attorney then waived time for judgment whereupon the court stated that he desired some information before he rendered judgment. The appellant's attorney then told the court the circumstances under which the check had been

forged; that the appellant had previously been sentenced to San Quentin on a charge of forgery; that he had been paroled and later sent back as a parole violator; that when he got out he had gone straight for a period of about thirteen months; and that he had then had some trouble with his wife. The attorney then suggested that the appellant ought to ''be given another chance by a jail sentence.'' The court then asked the appellant ''Can you offer any plausible reason, Mr. Sauer, why you, every time you get at liberty you commit some forgery?'' The appellant replied: ''Only . . . there is no excuse Your Honor, it is just I wasn't strong enough to bear under the strain.'' The defendant then went on to say that after he got out of San Quentin he wanted to do what was right towards his family; that he worked hard and gave them practically all he earned; that ''It just came about that, it just happened''; and that he would like to prove to the court that he could make good and that the trouble was probably fear, ''Afraid my past would become known here in town.''

The court then announced he would have to send the appellant to San Quentin and stated that he wanted to ask him some questions. Appellant's attorney then made a considerable argument to the effect that the appellant should be given a jail sentence. After some further discussion between the court, defendant's counsel and the assistant district attorney a short recess was taken, after which the court asked the appellant the usual questions preliminary to the pronouncement of judgment. The court then asked the appellant if he had any legal cause to show why judgment should not be pronounced and his attorney replied: ''No, Your Honor.'' Judgment was then pronounced.

Section 1200 of the Penal Code provides that when a defendant *appears* for judgment he must be informed of the nature of the charge against him and of his plea, and must be asked if he has any legal cause why judgment should not be pronounced against him. In this instance, he appeared to ask permission to change his plea, which was granted, and then waived time for judgment. The only reasonable conclusion is that when he came into court on this occasion he appeared for judgment. Before entering his plea of guilty he was informed of the nature of the charge against him, and that his former plea had been withdrawn. He then personally entered a plea of guilty. After a little interval during which his counsel made an earnest plea for a jail sentence and in

which the general circumstances of the case were brought out he was asked if he had any legal cause to show why judgment should not be pronounced. His attorney replied in the negative and the court proceeded to pronounce judgment. There is nothing in section 1200 which requires that the defendant be informed of the nature of his charge and of his plea immediately before the sentence is actually pronounced, and no possible prejudice could result from the fact that this was done here a few minutes before the judgment was pronounced and during the same proceeding and in connection with the very matter for which the appellant had come into court with his attorney. He had just been informed of the nature of the charge, and had just entered a plea of guilty. ▌ There was a substantial compliance with section 1200 and no prejudice appears. Under these circumstances, the minutes of the clerk are correct in their essence and no necessity for amending them appears. Not only does no prejudice appear but it would not be to the interest of the appellant to bring him back to court to rearraign him and again sentence him after he had already served about two years and seven months of his time.

▌ The appellant next contends that the denial of his motion to withdraw his plea of guilty and to vacate the judgment entered thereon was an abuse of discretion on the part of the trial court. He argues, in brief, that his entry of a plea of guilty of the crime charged was not voluntary and that the record shows that there was collusion between his attorney and the deputy district attorney by means of which he was misled into changing his plea from one of not guilty to one of guilty. The difficulty is that the record is devoid of anything which would even tend to support such a contention. In the transcript of the proceedings on June 15, 1942, when judgment was pronounced, which was read into evidence here, it appears that the appellant's attorney informed the court that they desired to withdraw the plea of not guilty and enter one of guilty; that the court then asked the appellant personally if this was his desire; that the appellant answered in the affirmative; and that after the appellant's counsel had stated the general facts of the case, including the fact that he had forged this check and cashed it at a certain place, the court asked the appellant whether he could offer any plausible reason for his actions. While the appellant's reply is somewhat rambling it indicates very clearly that he admitted that

he had forged the check in question and that he had no excuse to offer other than his own weakness.

At the hearing which resulted in the order here appealed from the appellant read into the record the transcript of the proceedings at the time judgment was pronounced and called two witnesses. The first of these was a deputy clerk and his testimony has no possible bearing on the questions before us. The appellant then called the attorney who had represented him at the time judgment was pronounced, on June 15, 1942. He asked this attorney whether or not he had told the appellant that if his plea of guilty were changed he would be given a jail sentence. The attorney replied: "No, I never told you that." He then asked the attorney if he had told the appellant that he had seen the judge and that the appellant need not be afraid to change his plea to guilty. The attorney denied that he had had any such conversation with the appellant. The attorney, in response to a question as to whether the appellant had asked him to go into court and change his plea, replied: "Yes." The attorney then stated that at first the appellant had denied having written the check in question; that after he had seen the check and compared it with an exemplar of the appellant's handwriting he had gone to see the appellant in jail and asked him to tell him the truth; that the appellant replied: "I wrote this check . . . no use my saying any farther that I did not"; that he informed the appellant of the evidence possessed by the district attorney and told him that they had not yet alleged the prior conviction but that if he stood trial they would probably charge a prior conviction; and that under these circumstances he had advised the appellant to plead guilty. The appellant then asked the attorney if he had not told him that, regardless of the facts, the judge was going to send him to the penitentiary if he did not change his plea. The attorney replied that he did not. The attorney then testified that they went into court to change the plea because the appellant had told him there was no use standing trial because he had written this check.

The appellant did not take the stand at the hearing here in question and he introduced no further evidence. The only suggestion of any inducement offered to the appellant to get him to change his plea appears in the questions he asked his former attorney. In each and every instance the testimony

of this attorney is to the contrary and that testimony not only stands uncontradicted in the record, but there is not a particle of evidence in the record to substantiate the appellant's present contention that the change of plea on his part was not voluntary or that any hope or inducement was offered to him to obtain such a changed plea. Under these circumstances, neither an abuse of discretion or error here appears. In this connection it may be observed that the appellant, in his briefs, argues many matters which are in no way concerned with the issues before the court or upon this appeal, and which are entirely unsupported by anything in the record.

The last point raised is that the trial court divested itself of jurisdiction to pronounce judgment against the defendant in that during the proceedings before judgment was pronounced on June 15, 1942, the judge "removed himself from the court room and accepted representations and testimony against appellant out of court and out of the presence of appellant." It is argued that this is contrary to the provisions of section 1204 of the Penal Code and that it was, therefore, incumbent upon the court to vacate the judgment on the ground that it is void.

This contention is based on the fact that during the proceedings on June 15, 1942, a recess was taken and a conference was held in the judge's chambers between the judge, the appellant's attorney, the assistant district attorney and a deputy district attorney. It appears from the transcript of the proceedings on that date that while the appellant's attorney was telling the court about the circumstances surrounding the case and urging that the appellant be given a jail sentence he mentioned the fact that he had talked to a deputy district attorney who was not present. A little later, the judge suggested that they get this deputy district attorney in. The assistant district attorney remarked that he could get him in about two or three minutes and a recess was taken. Some conversation then took place in the judge's chambers which does not appear in the transcript of the proceedings on that date. At the hearing, which resulted in the order here appealed from, the appellant called his former attorney and brought out the fact that such a conversation had taken place in the judge's chambers and that he himself did not go into the chambers. The record does not show whether or not he remained in hearing distance, however.

On cross-examination the deputy district attorney asked the appellant's former attorney to relate what had been said in chambers on June 15, 1942. The appellant objected on the ground that it made no difference what was there said and that he relied on the mere fact that some statements were made at that time which related to him. The objection was overruled and the appellant's former attorney gave the substance of the conversation that took place in the judge's chambers on the prior occasion. According to this, and there is nothing else in the record showing what the conversation was, the discussion was with respect to whether or not the deputy district attorney who had been called in had made any promises to the effect that the appellant would be given a jail sentence and whether he had made any agreement in that connection with appellant's then attorney. The only other thing in the conversation was that the fact that the appellant had been in San Quentin and had violated his parole was mentioned, and that his attorney had argued that in spite of this fact he "thought the man should have a road camp or a county jail sentence."

It sufficiently appears that anything said in this conversation in the judge's chambers was not a "representation . . . in aggravation or mitigation of the punishment" within the meaning of section 1204. In an abundance of caution the trial judge was merely attempting to make sure that no improper agreement had been made with the appellant in order to induce him to change his plea of not guilty to one of guilty. This went entirely to the legality of the plea and not to the kind of punishment that should be given. While the appellant's attorney again asked that he be given a jail sentence this was merely an argument on his part and was not a representation of fact of any kind. While some reference was made in that conversation to the fact that the appellant had previously been imprisoned and had violated his parole, that fact had been brought out a few minutes before by his own attorney in open court. The court had no intention of fixing the time of punishment which is governed by the indeterminate sentence law, no new facts were developed and the only thing mentioned, aside from the question as to whether any agreement had been made, was the reference to his violation of parole which had just been brought out in open court, and the argument of appellant's attorney that in spite of that fact he could well be given a jail sentence. No substantial

violation of section 1204 appears and if it be assumed that there was some technical violation of that section, it cannot be held reversible under the provisions of section 4½ of article VI of the Constitution. Neither prejudice to the appellant nor any possible miscarriage of justice can be ascribed to the incident in question.

For the reasons given, the order appealed from is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied February 2, 1945, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1945.