16124

STATE v. BODIE
(49 S. E. (2d) 575)

Mr. J. A. Hutto, of Columbia, for Appellant,

*Mr. T. P. Taylor, Solicitor,* of Columbia, *for Respondent.*

August 31, 1948.

FISHBURNE, Justice.

The appellant, Olin Bodie, was convicted of assault and battery with intent to kill Billy Abbott with a knife. His punishment was fixed at three years in the state penitentiary.

On November 29, 1947, the appellant, his brother, Leslie Bodie, and a friend, Paul Kessler, began a night's entertainment in the city of Columbia. At 6 o'clock in the evening, they got into an automobile and drove around the city and its environs, stopping from time to time at night clubs and road houses, where they danced and drank liquor and beer. This continued until about 11 o'clock, when they drew up and parked their car on a side street adjoining a three-family apartment house. The prosecuting witness, Billy Abbott, and his wife occupied the front apartment, and Wylie B. Head with his wife made their home in the rear apartment. There was an apartment upstairs occupied by Taylor Harley.

Appellant told Kessler, who was in a drunken condition, to get out of the automobile and go to the apartment building and see if any one was at home. He did so, and upon his return to the car told appellant that he saw a light in the lower hall, whereupon appellant and Kessler went to the apartment house, walked through the front door and down the hall to the rear apartment occupied by the Heads. Kessler, who was leading, knocked on the door, and uninvited, entered the room and stood by the heater. Bodie stood in the open doorway and inquired of Mr. Head, whom he knew only casually, if his sister Mildred was at home. The room they entered was Head's bedroom. His wife and Mrs. Abbott were in the kitchen, and Head and the other two apartment dwellers, Abbott, the prosecuting witness, and Harley, were at a table engaged in a sociable game of cards. Head told appellant that his sister was not at home. Realizing

that both Kessler and appellant were under the influence of whiskey, he ordered them to leave the premises.

It appears from the state's testimony that Bodie or Kessler replied that they were in no hurry. Head then arose from the card table, went to the heater where Kessler was standing, seized him and pushed him through the bedroom door out into the hall. He then shoved appellant across the hall against the wall of the staircase which led to the second floor. The appellant fell, and in rising came up with a knife, the blade of which was about four inches long, and attempted to cut or stab Mr. Head. Head warded off the blow, re-entered his room and got his rifle. While he was going through the process of loading the rifle, Abbott left the room, and walked toward his own apartment.

The Abbott apartment was on the same floor at the front of the building, and adjoined Head's; it was reached by a common hallway which was unlighted. As Abbott approached the front of the house and was within a few feet of his door, the appellant, who, Abbott says, was hidden behind the door to the staircase closet, suddenly emerged, grasped Abbott by the back of the neck, and with the other hand cut him with his knife. The deep cut or slash extended from his chin around the side of his face to the back of his neck, and required surgical and medical treatment for ten days. After cutting Abbott, appellant made his exit through the front door, ran around the side of the house and went to his home. Kessler had preceded him from the apartment building. Appellant's brother, who had remained outside in the automobile, was arrested that night by the officers, who were promptly summoned by Head. Appellant was arrested the next day, and Kessler several days later.

As stated, appellant had a casual acquaintance with Mr. Head, and was altogether unacquainted with Abbott, whom he cut, and Harley. Kessler, who walked into the room of Mr. Head uninvited where he, Abbott and Harley were playing cards, was a stranger to all of them.

We have stated in substance the testimony offered by the State, practically all of which was admitted by appellant. Appellant testified, however, that after Mr. Head had pushed him down by the staircase wall, he was making his way to the front door when someone struck him, and it was then, and only in self-defense, that he cut Abbott. As stated, they were strangers to each other. The hall was unlighted and he did not know the identity of the person he cut. Abbott testified that he had no weapon of any kind and made no attack upon appellant.

The trial judge fully charged the jury with reference to all the elements of self-defense. Appellant, however, assigns error because this charge was followed by instructions relating to the defense of habitation. It is argued that such instruction would have been applicable to Head, whose room was entered and who ordered appellant to leave the building, but the charge failed to meake clear the distinction between the legal status of Head, the occupant of the premises invaded, on the one hand, and of Abbott, a licensee or guest on the other hand. It is maintained that the language used by the trial judge tended to mislead the jury into believing that appellant, having been directed by Head to leave the premises, was a trespasser, and that Abbott, who was Head's guest, had as much lawful authority as Mr. Head to evict appellant. In effect, it is argued that the instruction deprived appellant of the plea of self-defense to the charge of assault and battery upon Abbott. As we view it, there is no merit in this contention.

If as a guest, Abbott was cut while attempting to aid Mr. Head in evicting a dangerous and violent intruder from the premises; then he would come within that principle of the law announced in *State v. Osborne,* 200 S. C. 504, 21 S. E. 2d 178, 182, in which case the court quoted with approval the following from the Annotation in 25 A.L.R. 522: "A guest of the householder is entitled to the protection that the law affords to the more permanent occupant or to the owner, and

may repel trespasses in or upon the house, or repel assaults, actual or menaced, as if he were under his own roof or within his own doors."

To the same effect, see 26 Am. Jur., Sec. 169, Page 271. Annotation, 21 Ann. Cas. 721, 725.

On the other hand, if we assume—as the jury evidently believed—that Abbott was the victim of an unprovoked attack by appellant while standing in the hallway of his own apartment, then it is clear that this assault deprived appellant of any plea of self-defense.

After the rendition of the verdict, and immediately before pronouncement of sentence, the solicitor stated in the court that he had been informed by·certain officers that appellant "Had cut two other persons besides the prosecuting witness." Defense counsel objected to this statement upon the ground that it had no probative value, being based upon hearsay, and that it was an improper remark. It is argued that the inevitable effect of this statement was to influence the trial judge, and tended to add to the severity of the sentence. The record shows that when defense counsel objected to the remark made by the solicitor, the trial judge stated that he had already decided what the sentence of the court would be; that the solicitor's statement would not be taken into consideration, and would have no effect upon the sentence pronounced.

We have held that with the view of fixing the sentence to be imposed upon a defendant, it is proper for the trial judge in open court, in the presence of the defendant, to inquire into any relevant facts in aggravation or mitigation of punishment. *State v. Brandon,* 210 S. C. 495, 43 S. E. 2d 449, 452; *State v. Adcock,* 194 S. C. 234, 9 S. E. 2d 730; *State v. Reeder,* 79 S. C. 139, 60 S. E. 434, 14 Ann. Cas. 968. And see to the same effect *State v. Rickenbaker,* 138 S. C. 24, 135 S. E. 651.

Statements coming under the ban of hearsay evidence would not be admissible under the rule announced in the

foregoing cases. The course followed by the trial judge in disregarding such statements was in conformity with the rule.

It was within the discretion of the trial judge to sentence appellant to imprisonment for a term of from three months to ten years. His sentence was assessed at three years, which under the facts of this case can in no sense be termed a harsh sentence. The record fails to show that appellant suffered any prejudice.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.