STATE v. EUGENE COLLINS POPE.

(Filed 15 June 1962.)

1. Constitutional Law § 31—

A defendant in a criminal prosecution has the right to be present throughout the trial, which right may be waived only in prosecutions for less than capital offenses.

2. Same;   Criminal Law § 127—

A defendant in a criminal prosecution has the common law right to be present at the time sentence or judgment is pronounced, which right is separate and apart from his constitutional or statutory right to be present throughout the trial.

**3. Same—**

Pre-sentence investigation to obtain information bearing upon the aggravation or mitigation of punishment after plea or verdict of guilty has been entered is favored and encouraged by the law, and in such investigations the trial judge must be given wide latitude and is not restricted by the rules of evidence applicable to the trial of the issue of guilt or innocence; nevertheless, oral testimony should not be heard in defendant's absence and hearsay testimony should be disregarded, and defendant should be given full opportunity to rebut any defamatory and condemnatory matters, to give his version of the offense charged, and to introduce any relevant facts in mitigation.

**4. Same—**

A judgment is presumed valid and just with the burden upon appellant to show error amounting to the denial of some substantial right, and a judgment will not be disturbed for procedures in the judge's pre-sentencing investigation in the absence of a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

**5. Same—**

A sentence entered after plea or verdict of guilty will not be disturbed because information bearing upon the aggravation or mitigation of sentence is heard by the court in the absence of defendant when such information is known or disclosed to defendant or his counsel before judgment is entered, and defendant is given opportunity to refute any unfavorable aspects of the information.

APPEAL by defendant from *Williams, J.,* and *Burgwyn, E.J.,* October 1961 Criminal Term of ALAMANCE.

Criminal actions, in which defendant is charged in bills of indictment as follows:

No. 83. Felonious breaking and entering, and larceny of goods of the value of $50.00.

No. 84. Felonious breaking and entering, and larceny of goods of the value of $60.00.

No. 202. Felonious breaking and entering, and larceny of goods of the value of $253.00.

No. 221. Larceny of chattel of the value of $400.00.

The indictments in cases 202 and 221 were returned by the grand jury of Durham County. These cases were removed to Alamance County for trial. Cases 83 and 84 were instituted in Alamance County.

In each of the cases defendant pleaded guilty before Williams, J., who presided during the first week of the two-weeks criminal term. Williams, J., imposed active prison sentences as follows:

No. 83. Not less than 2 nor more than 3 years.

No. 84. Not less than 18 months nor more than 2 years.

No. 202. Not less than 2 nor more than 4 years, to run concurrently with the sentence in 221.

No. 221. Not less than 2 nor more than 4 years.

Burgwyn, E.J., presided during the second week of the term. Defendant moved before him to set aside the judgments entered by Williams, J., and to vacate the prison sentences on the grounds that they were irregularly entered and violated defendant's constitutional rights. Defendant, in his written motion, alleged in substance that Judge Williams, after hearing evidence, called for the bills of indictment, invited to his room the solicitor, the deputy clerk and two officers who had testified for the State, left the bench and retired with them to chambers, for more than an hour held a private conference in which the judge questioned the officers relative to the punishment to be given defendant, received information not previously elicited in open court, failed to invite defendant or his counsel to be present at the conference, and imposed the judgments after privately receiving the information.

At the hearing on the motion, defendant called as witnesses the two officers who had participated in the alleged conference. These officers had investigated the charges against defendant and had testified for the State in open court in the presence of defendant and his counsel prior to the alleged private conference. They testified in the motion hearing before Judge Burgwyn, in substance except where quoted verbatim, as follows: Seven defendants, "boys," had pleaded guilty in 68 cases from six counties. The judge was considering all these cases at the same time. Some of the cases involved larceny only, and some involved breaking and entering and larceny. Some of the alleged offenses were felonies, some were misdemeanors. In some of the indictments several defendants were charged jointly, in others only one defendant was named. "The total value of the warrants (of goods stolen) . . . was about $17,000. . . . (T)otal of what was recovered was somewhere in excess of $9,000 or $10,000." No effort had been made "to assemble information . . . as to each defendant. . . . (I)n that conference the time was spent compiling the information. . . ." And an "effort was made to assign numbers to each of the bills and warrants" to correspond to the numbers on the "shucks" in which they had been placed — this had not been done before. The solicitor read from the bills of indictment, and the judge made tabulations as to each defendant, separating felonies and misdemeanors, and adding the value of goods involved. The officers were assisting the solicitor in separating the bills and warrants. The conference lasted about an hour and a half. Most of what was being done was tabulation. There was very little conversation. None of the defendants or their attorneys

were in the judge's room at any time during the conference. Something was said to the judge about instances in which gasoline had been stolen, but for which no warrants had been issued. Values were not mentioned, and no particular defendant was mentioned in this connection. In the testimony in open court prior to the conference, the officers had testified that "there were other cases that warrants were not issued for." In conference they "did discuss the boys and what type of boys they were, they were good boys, etc. All of that had been brought out" in the testimony prior to the conference. Eugene Collins Pope and William Anderson "had never been in any trouble before." Something was said about the Smith boy (another defendant) assisting and co-operating with the officers. In the conference no one was designated or mentioned as captain or a leader among the defendants. No recommendations were made to the judge with reference to punishment. When the judge returned to the bench he called one of the officers to the stand and questioned him in open court in the presence of defendants "about any other cases they (defendants) were involved in and what they were." The judge tendered the witness for cross-examination. Thereafter the judgments were entered.

Judge Burgwyn found as a fact that the evidence does not show the "judgments were either irregular or contrary to the practice of the courts and in violation of the constitutional rights of the defendant." He further found that the challenged action of Judge Williams "was for the purpose of determining in his own mind what was right, just and proper punishment. . . ." He overruled the motion.

Defendant appeals from the judgments entered by Judge Williams, and from the order of Judge Burgwyn overruling the motion.

*Attorney General Bruton for the State.*
*Dalton, Long & Latham for defendant.*

MOORE, J.   The motives of Judge Williams are not in question on this appeal. Defendant's brief states: "Judge Williams went to a lot of trouble . . . out of a sense of duty. He knew none of the parties and had no prior feelings one way or the other. In fact, as the record shows, on his own initiative Judge Williams brought out in open court what he apparently thought was the most important matter he had elicited in chambers — the theft of the gasoline not charged in any of the bills or warrants. Nevertheless, the defendant feels he was entitled to hear what the Judge heard at the time he heard it and not by way of recapitulation."

Thus is presented the sole question as to whether or not a judge presiding at a criminal term of court violates a fundamental right of

a defendant when he receives in the absence of defendant, after a plea or verdict of guilty has been entered, information bearing upon the matter of punishment, either in aggravation or mitigation, even when the information is known, or disclosed, to defendant and his counsel before judgment is entered, and defendant is given opportunity to refute any unfavorable aspects of the information.

As to what is proper procedure in the sentencing process we do not find unanimity among the courts.

In every criminal prosecution it is the right of the accused to be present throughout the trial, unless he waives the right. And in capital trials the right cannot be waived by the prisoner. *State v. O'Neal,* 197 N.C. 548, 149 S.E. 860; *State v. Cherry,* 154 N.C. 624, 70 S.E. 294; *State v. Dry,* 152 N.C. 813, 67 S.E. 1000. ". . . (T)he tradition of our courts is that their hearings shall be open. The Constitution of North Carolina so provides, Article I, section 35." *Raper v. Berrier,* 246 N.C. 193, 97 S.E. 2d 782. The right to be present at the time sentence or judgment is pronounced is a common law right, separate and apart from the constitutional or statutory right to be present at the trial. *Ball v. United States,* 140 U.S. 118. A defendant should be present when evidence is introduced for the purpose of determining the amount of punishment to be imposed. 14 Am. Jur., Criminal Law, s. 190, pp. 899, 900; *Thomas Fowler's Case,* 13 N.W. 530 (Mich. 1882). However, the procedure in the sentencing process is not the same as that in the trial process. *Driver v. State,* 92 A. 2d 570 (Md. 1952).

In some jurisdictions the sentencing procedure is regulated by statute. California and Montana have laws providing that punishment is to be determined in the sound discretion of the trial judge after the circumstances have been presented by the testimony of witnesses examined in open court. California Penal Code, ss. 1203, 1204; Revised Code of Montana (1947), ss. 94-7813, 94-7814. Under these statutory provisions any representation made to the court in aggravation or mitigation of punishment may not be considered unless made in open court in the presence of the accused. *People v. Sauer,* 155 P. 2d 55 (Cal. 1945). Though the court may receive and consider the pre-sentence report of a probation officer, letters, telephone messages and personal requests relating to punishment may not be considered, and where it appeared that such were received and given attention by the trial judge, the sentence imposed was vacated and the cause remanded for proper sentence. *People v. Giles,* 161 P. 2d 623 (Cal. 1945). And under such statute the unsworn report and recommendations of an investigating probation officer "privately offered and privately received and adopted by the trial judge do not measure up to . . . requirements. . . ." *Kuhl v. District Court,* 366 P. 2d 347 (Mont. 1961).

In South Carolina the reception and adoption of information in aggravation or mitigation of punishment is strictly guarded. Evidence of moral character and affidavits may be received, and these do not violate the constitutional right of confrontation. *State v. Reeder*, 60 S.E. 434 (S.C. 1908). It is proper "for the trial judge in open court, in the presence of the defendant, to inquire into any relevant facts in aggravation or mitigation of punishment." *State v. Brandon*, 43 S.E. 2d 449 (S.C. 1947) ; *State v. Bodie*, 49 S.E. 2d 575 (S.C. 1948). But where the judge discussed with the solicitor and another in his chambers, in the absence of defendant and his counsel, the matter of punishment, the sentence thereafter imposed was vacated on appeal. Held: Defendant "has a right that everything pertaining to the case, in the way of evidence affecting the case, be open . . . and public." *State v. Harvey*, 123 S.E. 201 (S.C. 1924). And where, in sentencing accused, the judge remarked, "A number of people from your community have been to see me at my office about you, and they have all spoken against you. . . . (N)o one has come . . . to speak a good word in your behalf," on appeal the case was remanded for resentencing. *State v. Simms*, 127 S.E. 840 (S.C. 1925).

In a Texas case the trial judge held a conference in the absence of defendant, and reviewed the evidence with the county attorney and an officer before entering judgment. The appellate court stated that the right to be present extends to the time ". . . 'when evidence is introduced for the purpose of determining the amount of punishment to be imposed'. . . . We think the trial court should be granted great latitude in what he considers, in order to properly fit the punishment to the offender, but all reason and justice require that the accused be present when he hears anything defamatory of the accused." *Phelps v. State*, 257 S.W. 2d 302 (Tex. 1953).

It has been declared the better practice to receive and consider in open court in defendant's presence pre-sentence investigation reports of probation officers and other officials. *Stephan v. United States*, 133 F. 2d 87 (CC6C 1943) ; *Smith v. United States*, 223 F. 2d 750 (CC5C 1955).

In Pennsylvania when a defendant enters a general plea of guilty to a murder indictment, a three-judge court *en banc* hears evidence and determines the degree of guilt and fixes the punishment, and thus to some extent exercises the functions of both jury and judge. In such cases the reception of evidence is subject to approximately the same rules as in jury trials. *Commonwealth v. Johnson*, 35 A. 2d 312 (Pa. 1944) ; *Commonwealth v. Petrillo*, 16 A. 2d 50 (Pa. 1940). But the opinion in *Petrillo* lays down the principles applicable in sentencing generally, as follows: "In determining what the penalty shall be after

convictions in criminal cases, courts have a wide latitude in considering facts, whether or not these facts are produced by witnesses whom the members of the court may see and hear. In many jurisdictions courts in determining proper sentences consider official records and the reports of probation officers, psychiatrists and others." See *Commonwealth v. Coleman,* 115 A. 2d 811 (Pa. 1955). In a case in which accused was charged with robbery, the judge, after verdict but before imposing sentence, held a conference in chambers. He invited a captain of police into consultation and stated, "All of you can be present." On appeal the court stated: "It is of course true that a defendant . . . has a right to be present at every stage of the proceedings from arraignment to the rendition of verdict. (Citing authorities.) However, this right does not extend to a pre-sentence investigation. In determining appropriate sentences, trial judges have a wide latitude in ascertaining pertinent facts, whether or not these facts are produced by witnesses who are seen and heard. . . . The sentencing of a defendant is a matter which is committed to the sound discretion of the trial judge." Judgment was not disturbed. *Commonwealth v. Myers,* 165 A. 2d 400 (Pa. 1960).

The Maryland court states the matter thus: "To aid the sentencing judge in exercising . . . discretion intelligently, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the kind of sentence that should be imposed. In such cases, however, any information which might influence his judgment, which has not been received from the defendant himself or has not been given in his presence, should be called to his attention, or to the attention of his counsel, without necessarily disclosing the sources of such information, so that he may be afforded an opportunity to refute or discredit it." *Driver v. State, supra.*

The Supreme Court of the United States, in a well considered opinion, *Williams v. New York,* 337 U.S. 241 (1949), delivered by *Mr. Justice Black,* has spoken clearly and with practical understanding on the subject of procedure and the exercise of discretion by trial judges in the sentencing process. The opinion states:

> "Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources

and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law. Out-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and backgrounds of convicted offenders. A recent manifestation of the historical latitude allowed sentencing judges appears in Rule 32 of the Federal Rules of Criminal Procedure. That rule provides for consideration by federal judges of reports made by probation officers containing information about a convicted defendant, including such information 'as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant. . . .'

"In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time-consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevent — if not essential — to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."

". . . We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this

information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues.

"The considerations we have set out admonish us against treating the due process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence. . . . In determining whether a defendant shall receive a one-year minimum or a twenty-year maximum sentence, we do not think the Federal Constitution restricts the view of the sentencing judge to the information received in open court. The due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would hinder if not preclude all courts — state and federal — from making progressive efforts to improve the administration of criminal justice."

In our opinion rules of mathematical certainty and rigidity cannot be applied to the sentencing process. Justice may be served more by the substance than by the form of the process. We prefer to consider each case in the light of its circumstances. It is conceded that in a great many criminal cases, especially when there has been a plea of guilty, the matters of greatest concern to defendant are the nature and severity of his punishment, and he has the right to fair and just consideration, and to be given full opportunity to rebut representations in aggravation of punishment and to make representations in mitigation. Sentencing is not an exact science, but there are some well established principles which apply to sentencing procedure. The accused has the undeniable right to be personally present when sentence is imposed. Oral testimony, as such, relating to punishment is not to be heard in his absence. He shall be given full opportunity to rebut defamatory and condemnatory matters urged against him, and to give his version of the offense charged, and to introduce any relevant facts in mitigation.

G.S. 15-198 provides: "When directed by the court the probation officer shall fully investigate and report to the court in writing the circumstances of the offense and the criminal record, social history, and present condition of the defendant, including, whenever practicable, the findings of a physical and mental examination of the defendant." This establishes policy that full investigation may be made before sentencing. The pre-sentence investigation may be made by

a probation officer or by the trial judge himself. The investigation may adduce information concerning defendant's criminal record, if any, his moral character, standing in the community, habits, occupation, social life, responsibilities, education, mental and physical health, the specific charge against him, and other matters pertinent to a proper judgment. The information obtained by investigation may be received and considered. It is discretionary with the judge whether or not the sources of information are divulged, else it might prove difficult to obtain information in many instances, and the time required in sentencing procedure might be unreasonably extended. Unsolicited whispered representations and rank hearsay are to be disregarded. It is better practice to *receive* all reports and representations from probation officers in open court. All information coming to the notice of the court which tends to defame and condemn the defendant and to aggravate punishment should be brought to his attention before sentencing, and he should be given full opportunity to refute or explain it.

In our opinion it would not be in the interest of justice to put a trial judge in a straitjacket of restrictive procedure in sentencing. He should not be put in a defensive position and be required to sustain and justify the sentences he imposes, and be subject to examination as to what he has heard and considered in arriving at an appropriate judgment. He should be permitted wide latitude in arriving at the truth and broad discretion in making judgment. Pre-sentence investigations are favored and encouraged. There is a presumption that the judgment of a court is valid and just. The burden is upon appellant to show error amounting to a denial of some substantial right. *State v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342. A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

We are of the opinion that the sentences imposed in the instant case should be affirmed. The most reasonable inference to be drawn from the evidence in the record is that Judge Williams retired to chambers for the sole purpose of clerically compiling and considering the information contained in the 68 bills of indictment. Certainly the judge's chambers are better adapted to such activity than the bench in open court. He called to his aid in tabulating the information those most familiar with the indictments and their contents. It must be assumed that defendant and his counsel were thoroughly familiar also with the bills of indictment affecting him. In listing the cases and the value of goods stolen, it was logically called to the judge's attention that there had been thefts of gasoline for which no indictments had been re-

turned. All other matters mentioned in chambers had been testified to in open court in defendant's presence, and were favorable to defendant — that his record was good and he had not been in trouble previously. No recommendation was made as to punishment. Upon the judge's return to the courtroom, he called to the witness stand one of the officers who had been assisting him in chambers, and questioned him concerning the thefts for which no prosecutions had been instituted, thus disclosing the information he had received privately. Defendant was given the opportunity to cross-examine the officer. He had full opportunity to show he was not involved in these thefts, if in fact he was not.

As already indicated, defendant in his brief admits that the facts do not show that he was prejudiced by the conduct of the court. On the charges pending against defendant, the judge could have imposed sentences aggregating in the maximum fifty-four years. None of defendant's fundamental rights were violated, and he was not denied that due process of law guaranteed by Article I, section 17, of the North Carolina Constitution.

The judgments entered by Judge Williams and the ruling and order of Judge Burgwyn are

Affirmed.