STATE OF NORTH CAROLINA v. GEORGE TRUITT WALSTON, JR.

No. COA08-15

(Filed 7 October 2008)

## 1. Criminal Law— continuance—denial—drug dog handler absent

The trial court did not err by not continuing a cocaine prosecution because a canine handler could not be present. Defendant did not articulate any specific facts about which the officer would testify and which would substantiate his defense.

## 2. Evidence— drug dog handler not present—testimony about location of object

The trial court did not err by allowing an officer who was not a canine handler but who was present at the scene to describe a dog's location of something defendant had thrown aside in a chase. Cases requiring a voir dire on the dog's training and qualifications concern the identity of perpetrators; moreover, the dog's tracking in this case was within the witness's personal knowledge.

**3. Evidence— drug dog alert—hearsay testimony—not plain error**

There was no plain error in a cocaine prosecution in the admission of testimony relating an officer's statement about where a dog gave an alert. Assuming the testimony was hearsay, the other evidence in the case was sufficient for guilt.

**4. Sentencing— drug trafficking—consecutive sentences**

Sentences for cocaine trafficking were remanded where the trial court mistakenly understood N.C.G.S. § 90-95(h)(6) to require consecutive sentences for a defendant convicted of more than one drug trafficking charge disposed of at the same sentencing hearing.

Appeal by defendant from judgments entered 28 September 2007 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 18 August 2008.

*Roy Cooper, Attorney General, by Marc X. Sneed, Assistant Attorney General, for the State.*

*Haral E. Carlin for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was convicted of trafficking in cocaine by possession of more than 28 grams but less than 200 grams and conspiracy to traffic in cocaine by possession of more than 28 grams but less than 200 grams. He was sentenced to two consecutive sentences, each with a minimum term of 35 months and a maximum term of 42 months. Defendant appeals from his conviction and sentence.

The evidence presented at trial tended to show that a man called "Cane" was working as a confidential informant for the Raleigh Police Department. On 28 July 2005, Cane contacted Pierre Estrella, asking Estrella to find someone to sell him an ounce of cocaine. Estrella called George Walston, Jr. ("defendant"), and they agreed to meet at a park in Cary. While at the park, Estrella and defendant discussed selling the cocaine, and they planned to arrive together at a location where they would meet Cane and where Estrella would introduce Cane and defendant. The parties agreed to meet at a Wendy's restaurant on Trinity Road, near the RBC Center in Raleigh. Detective L.T. Marshburn rode with Cane to Wendy's and waited about ten minutes before defendant and Estrella arrived in Estrella's

truck. When Estrella and defendant pulled into the Wendy's parking lot, Cane jumped into the truck. Cane gave a visual signal to Detective Marshburn that cocaine was present in the truck.

Shortly thereafter, Raleigh police officers arrived with their lights flashing. Estrella began to drive away but was stopped by the police. As Estrella attempted to drive away, defendant exited the truck and began running away from Wendy's toward the RBC Center. Detective Mark Quagliarello chased defendant, losing sight of him only briefly as defendant ran through a wash pit area of a car wash that was about ten to fifteen feet long, and maintained sight of him thereafter until he was apprehended. Detective Quagliarello chased defendant into a gulley and, from about ten feet away, observed defendant use his right hand to throw to the ground a plastic bag containing something. Then defendant fell, and police apprehended him. The police called a canine unit to search the gulley, and canine agent "Axe," accompanied by canine handler Sergeant P.T. Medlin, performed an article search of the area where defendant had been running and found a plastic bag containing 30.6 grams of cocaine.

At trial, defendant testified that on 28 July 2005 he was riding with Estrella to Estrella's house to watch a basketball game when Estrella pulled up to Wendy's, made a phone call to a man called "Tweet," and told Tweet to bring an ounce of cocaine because a man was there with the money. Realizing that a drug transaction was about to occur, defendant exited the vehicle and began to run away from the scene. After he was out of the vehicle, defendant looked up and saw a car coming straight at him, and defendant ran through a nearby car wash to avoid the car. Defendant continued to run across Trinity Road toward Edwards Mill Road through high grass but on flat land. Before he arrived at the intersection, he saw police running towards him, and he lay on the ground so the police would not think he had a gun. At that time, police apprehended defendant.

.Defendant was arrested and charged with trafficking in cocaine by possession of more than 28 grams but less than 200 grams and conspiracy to traffic in cocaine by possession of more than 28 grams but less than 200 grams. The case was set for trial a number of times but was not reached on the calendar until 26 September 2007. Defense counsel was notified on 25 September that the case would be heard the next day, and she immediately contacted the Raleigh Police Department to find out if Sergeant Medlin was available for the trial. Sergeant Medlin was in Maryland for training during the week when

trial was scheduled and could not appear and testify. Defendant moved to continue the trial until Sergeant Medlin could appear, arguing that he was a material witness. The court denied defendant's motion, and defendant was tried by a jury and convicted on both charges.

---

I.

[1] Defendant first argues that the trial court committed reversible and prejudicial error by denying his motion to continue the trial in order to secure the attendance and testimony of Sergeant Medlin as a necessary and material witness for the defense, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution.

> Although a motion for a continuance is ordinarily addressed to the discretion of the trial judge and is reviewable only upon a showing of an abuse of discretion, when the motion is based on a constitutional right the ruling of the trial judge is reviewable on appeal as a question of law.

*State v. Maher*, 305 N.C. 544, 547, 290 S.E.2d 694, 696 (1982). "The denial of a motion to continue, even when the motion raises a constitutional issue, is grounds for a new trial . . . upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result of the error." *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982).

Under the Sixth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The Sixth Amendment guarantees " '. . . in plain terms the right to present a defense' "; therefore, "[a] continuance in a criminal trial essentially involves a question of procedural due process. Implicitly, the courts balance the private interest that will be affected and the risk of erroneous deprivation of that interest through the procedures used against the government interest in fiscal and administrative efficiency." *State v. Roper*, 328 N.C. 337, 349, 402 S.E.2d 600, 607, *cert. denied*, 502 U.S. 902, 116 L. Ed. 2d 232 (1991) (quoting *Washington v. Texas*, 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023 (1967)).

Article I, Sections 19 and 23 of the North Carolina Constitution also guarantee defendant a right to due process, stating "[i]n all crim-

inal prosecutions, every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony," N.C. Const. art. I, § 23, and "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19.

> In examining the denial of a motion for a continuance for constitutional error, North Carolina case law, like its federal counterpart, implicitly balances the individual interest and the risk of an erroneous deprivation of that interest in light of the procedure being used against the State's interest in fiscal and administrative efficiency.

*Roper*, 328 N.C. at 352, 402 S.E.2d at 608. In balancing these interests, "[c]ourts have discussed numerous factors which are weighed to determine whether the failure to grant a continuance rises to constitutional dimensions. *Of particular importance are the reasons for the requested continuance presented to the trial judge at the time the request is denied." Id.* at 349, 402 S.E.2d at 607 (emphasis added).

In the present case, defendant argued to the trial court that Sergeant Medlin was a necessary and material witness because he could testify (1) about the route the dog took in order to find the drugs, (2) about how the drugs were recovered, (3) that the canine officers train the dogs in the area where the drugs were located, (4) that the area where the drugs were located was a well-known area for drug activity, and (5) whether or not it was likely the drugs came from defendant. Although defendant now argues that Sergeant Medlin's testimony would have supported his defense that the drugs were not his, the information presented to the trial court was insufficient to substantiate this argument. Specifically, defendant argued that Sergeant Medlin could testify about the route the dog took in order to find the drugs and how the drugs were recovered. Such a general description of the expected testimony does not necessarily show any connection to defendant's defense. Defendant also argued that Sergeant Medlin could testify that canine training is conducted in the area near the RBC Center where defendant was apprehended. Without a more specific description of how this information would substantiate his defense, defendant has not shown that this evidence is material to his case. As for defendant's contention that the area was well-known for drug activity, Detective Marshburn

was competent to testify about the matter and in fact testified that in his experience the area was not well-known for drug activity.

Ultimately, defendant argued that Sergeant Medlin could testify as to "whether or not . . . it was likely these drugs actually came from [defendant]." This description of the expected testimony clearly equivocates as to *whether* the drugs likely came from defendant. By contrast, defendant did not state that Sergeant Medlin had any information to show that it was likely the drugs did *not* come from defendant. Since defendant did not articulate any specific facts about which Sergeant Medlin would testify and which would substantiate defendant's defense, we cannot assume that Sergeant Medlin would have testified that the drugs likely did not come from defendant. Although defendant presented the trial court with a description of evidence that likely would have been relevant to the case, he did not describe any evidence in sufficient detail to demonstrate that the lack of such evidence would materially prejudice his case. Where "defendant has failed to demonstrate he suffered material prejudice by the denial of his motion[] to continue," the trial court did not err in denying the motion to continue. *State v. Morgan*, 359 N.C. 131, 145, 604 S.E.2d 886, 895 (2004), *cert. denied*, 546 U.S. 830, 163 L. Ed. 2d 79 (2005).

## II.

[2] Defendant next argues the trial court committed reversible error by overruling defendant's objection and allowing Detective Marshburn's testimony regarding Axe's tracking of defendant because Detective Marshburn did not produce the requisite qualifications of the dog. Defendant cites the requirements for admitting the actions of tracking dogs into evidence as recognized by this Court, including: (1) the dog must possess "acuteness of scent and power of discrimination," having been "accustomed and trained to pursue the human track"; (2) the dog must have experience and have been found reliable in pursuit; and (3) "in the particular case [the dog was] put on the trail of the guilty party, which was pursued and followed under such circumstances and in such way as to afford substantial assurance, or permit a reasonable inference, of identification." *State v. Green*, 76 N.C. App. 642, 644, 334 S.E.2d 263, 265, *disc. review denied*, 315 N.C. 187, 340 S.E.2d 751 (1985). Defendant also cites other cases where unknown fleeing perpetrators were pursued and tracked by a dog, identified by the dog, and arrested by police. *State v. Irick*, 291 N.C. 480, 496, 231 S.E.2d 833, 844 (1977) (dog tracked defendant from a "blind scent because, at the time, the police had no suspects in the . . . burglary"); *State v. McLeod*, 196

N.C. 542, 543, 546, 146 S.E. 409, 410, 411 (1929) (dogs tracked defendant from the scene of the crime, but "the action of the bloodhounds was such as to afford no reasonable inference of the identity of the prisoner as the guilty party").

In the line of cases cited by defendant, evidence of the tracking dog's action was admitted to prove the *identity* of the perpetrators. To this end, courts require a voir dire proceeding on the dog's credentials and training. *See Irick*, 291 N.C. at 495, 231 S.E.2d at 843. However, these case are clearly distinguishable from the instant case because Axe's tracking abilities were not used to identify defendant. Rather, Axe's tracking abilities were used to quickly locate the item Officer Quagliarello observed defendant throw in the gulley.

Furthermore, Detective Marshburn's testimony of Axe's tracking was admissible as a matter about which he had personal knowledge. *See* N.C. Gen. Stat. § 8C-1, Rule 602 (2007) (stating that in order for a witness to testify to a matter, he must have personal knowledge of the matter). Accordingly, the trial court did not err in admitting Detective Marshburn's testimony about Axe's tracking.

### III.

[3] Defendant next argues the trial court committed plain error by allowing Detective Marshburn to testify as to Sergeant Medlin's statement about where the dog gave the alert for cocaine. He contends such testimony was inadmissable hearsay. "In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(c)(4) (2008). Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

Assuming *arguendo* that Detective Marshburn's testimony regarding Sergeant Medlin's statements leading to Detective Marshburn's discovery of the cocaine constituted hearsay, its admission is plain error only if the jury probably would have reached a different verdict had this evidence been excluded. *Id.* Other evidence presented at trial showed that prior to the defendant's arrival at Wendy's, defendant met with Estrella and discussed selling cocaine.

Defendant accompanied Estrella to sell cocaine and attempted to flee when police arrived and pursued him. Officer Quagliarello observed defendant throw an object on the ground while he was about ten feet away from defendant, and police recovered a plastic bag containing 30.6 grams of cocaine after searching the area. This evidence, even without Detective Marshburn's testimony of Sergeant Medlin's statements about the area where the dog alerted, was sufficient for the jury to find defendant guilty on the charges of both trafficking in cocaine by possession and conspiracy to traffic. Therefore, the trial court did not commit plain error in admitting Detective Marshburn's testimony.

## IV.

[4] Finally, defendant argues the trial court committed reversible error by sentencing defendant to consecutive active terms of imprisonment under the mistaken impression that N.C.G.S. § 90-95(h)(6) required consecutive sentences for a defendant. convicted of more than one drug trafficking charge at the same sentencing hearing.

The applicable statutes requires "[s]entences· imposed pursuant to this subsection shall run consecutively with and shall commence at the expiration of any sentence being served by the person sentenced hereunder." N.C.G.S. § 90-95(h)(6) (2007). Among the crimes covered in subsection (h) is "trafficking in cocaine." N.C.G.S. § 90-95(h)(3). This Court has held that N.C.G.S. § 90-95(h)(6) "does not require consecutive sentencing for two . . . offenses disposed of in the same proceeding." *State v. Bozeman*, 115 N.C. App. 658, 662-63, 446 S.E.2d 140, 143 (1994).

Normally, sentencing rests in the trial court's discretion, and:

A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.                  ·

*State v. Pope*, 257 N.C. 326, 335, 126 S.E.2d 126, 133 (1962). However, a court's mistaken interpretation that a statute limits its discretion is cause to vacate the sentence and remand for resentencing. *State v. Crain*, 73 N.C. App. 269, 271, 326 S.E.2d 120, 122 (1985).

In the present case, during the sentencing phase of the trial, the court stated: "Going to General Statute 90-95h, subsection six, sen-

tence is imposed pursuant to this subsection shall run consecutively."
Conspicuously absent from the court's statement of the law is the
remainder of the language in subsection (h)(6) stating, "consecutively
with . . . any sentence being served by the person sentenced hereun-
der." N.C.G.S. § 90-95 (h)(6). In determining what the court meant
when it recited only the portion of the statute that said sentences
"shall run consecutively," we consider that "ordinarily, the word
'must' and the word 'shall,' in a statute, are deemed to indicate a leg-
islative intent to make the provision of the statute mandatory." *State
v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 662 (1978). We can only
conclude, based on the court's statement during sentencing, that the
court incorrectly understood the statute as mandating consecutive
sentences for offenses disposed of in the same proceeding. Thus, we
must remand for a new sentencing hearing.

No error, remanded for resentencing.

Judges WYNN and HUNTER concur.