STATE OF NORTH CAROLINA v. JAMES EDWARD ROPER

No. 301A88

(Filed 3 April 1991)

### 1. Constitutional Law § 347 (NCI4th)— continuance—discretion of court—rights to due process and compulsory process

Generally, the granting of a continuance is within the sound discretion of the trial court. A significant limitation on that discretion occurs where denial of a continuance results in the violation of a defendant's right to due process or his Sixth Amendment right to compulsory process.

**Am Jur 2d, Criminal Law § 717.**

### 2. Constitutional Law § 347 (NCI4th)— denial of continuance—constitutional error—balancing of individual and government interests

In examining the denial of a motion for a continuance for error under either the federal constitution or the state constitution, the courts balance the private interest that will be affected and the risk of erroneous deprivation of that interest through the procedures used against the government interest in fiscal and administrative efficiency.

**Am Jur 2d, Criminal Law § 717.**

### 3. Constitutional Law § 347 (NCI4th)— witness not located—denial of continuance—no denial of constitutional rights

The trial court's denial of defendant's motion for a continuance because a witness to the shooting of the deceased could not be located was not an abuse of discretion, did not deny defendant his Sixth Amendment right to compulsory process or his right to due process under the U. S. Constitution, and did not violate defendant's right of confrontation guaranteed by Art. I, § 23 of the N. C. Constitution where the State made extensive efforts to locate the witness after diligently serving him with a subpoena; testimony at trial indicated that the witness had previously been known to hide from authorities and that he was able to live in the woods for an extended period of time under conditions that others could not survive; and testimony by the witness was admitted into evidence by

STATE v. ROPER

[328 N.C. 337 (1991)]

way of statements he had made to a sheriff's department detective and to defendant's counsel.

**Am Jur 2d, Criminal Law § 717.**

**4. Constitutional Law § 346 (NCI4th)— denial of funds for investigator—no violation of constitutional rights**

The trial court's denial of funds for an investigator to help defendant locate a witness to the shooting of the deceased was not an abuse of discretion or a violation of defendant's constitutional rights to compulsory process and due process where statements made by the witness during interviews by a sheriff's department detective and defendant's counsel were admitted into evidence, and the witness was unlikely to be discovered given the evidence of his flight and the significant good faith efforts expended by the sheriff and others to find him.

**Am Jur 2d, Criminal Law §§ 719, 771, 955, 1006.**

**5. Constitutional Law § 344 (NCI4th)— right to be present at trial—venire persons sworn by another judge**

Defendant was not denied his right to be present at every stage of his trial because the trial judge supplemented the jury venire with venire persons who had been sitting in an adjoining courtroom and those jurors had already been sworn by another judge but had not been empaneled or selected for another case.

**Am Jur 2d, Jury § 340.**

**6. Criminal Law § 73.2 (NCI3d)— statement causing action by witness—not inadmissible hearsay**

In a prosecution for first degree murder, first degree rape and first degree kidnapping as an habitual felon, testimony by a witness that, after he and his wife were awakened by a gunshot and he had called the sheriff's department, his wife heard the rape and kidnapping victim ask, "Are you going to shoot me, too?" was not inadmissible hearsay but was relevant and properly admitted for the limited purpose of showing that a statement was made which caused the witness to call the sheriff's department a second time.

**Am Jur 2d, Evidence § 496.**

7. **Constitutional Law § 340 (NCI4th) — testimony showing statement was made — right of confrontation not violated**

Defendant's constitutional right of confrontation was not violated by the admission of a witness's testimony that his wife heard a kidnapping and rape victim ask, "Are you going to shoot me, too?" where the testimony was used merely to show that the statement had been made and its effect on the witness.

Am Jur 2d, Evidence § 496.

8. **Criminal Law § 73.2 (NCI3d) — statements by unavailable witness — residual exception to hearsay rule**

Testimony by a deputy sheriff that a murder victim told him the day he died that defendant had threatened his life and threatened to rape a kidnapping and rape victim was admissible under the residual exception to the hearsay rule where the declarant was present during the events he related to the deputy; the declarant's motivation to tell the truth was supported by the fear for his life as shown by evidence that he had caused the other victim to call the authorities and was proceeding to the magistrate's office when he was killed; the declarant never recanted his statements; and his unavailability resulted from his death at the hands of defendant.

Am Jur 2d, Evidence § 496.

9. **Constitutional Law § 349 (NCI4th) — hearsay testimony — indicia of reliability — right of confrontation not denied**

Defendant's Sixth Amendment right of confrontation was not violated by the admission of a deputy sheriff's hearsay testimony that a murder victim told him the day he died that defendant had threatened his life and had threatened to rape a kidnapping and rape victim where the hearsay statements possessed indicia of reliability in that the deputy's discussion with the murder victim contained particularized guarantees of trustworthiness which rendered the victim worthy of belief.

Am Jur 2d, Evidence § 496.

10. **Searches and Seizures § 43 (NCI3d) — motion to suppress at trial — statement of legal ground — affidavit unnecessary**

A motion to suppress made at trial, whether oral or written, should state the legal ground upon which it is made.

While an affidavit is not required for a motion to suppress timely made at trial, the defendant must specify that he is making a motion to suppress and request a voir dire.

**Am Jur 2d, Evidence §§ 425, 426.**

11. **Searches and Seizures § 43 (NCI3d) — general objection to seized evidence — failure to state basis — absence of motion to suppress**

The trial court did not err in admitting evidence seized during a search of defendant's residence where defendant made only a general objection and motion to strike at trial that failed to state any legal or factual basis for the objection, and defendant never made a motion to suppress and never requested a voir dire.

**Am Jur 2d, Evidence §§ 425, 426.**

12. **Criminal Law § 425 (NCI4th) — jury argument — no comment on defendant's failure to testify**

Where the prosecutor in a murder case was responding to defendant's assertion that the State's case rested solely on the testimony of one witness, the prosecutor's closing argument pointing out that the witness to defendant's alleged acts of self-defense had not come forward to testify was not inappropriate and did not constitute a comment on defendant's failure to testify.

**Am Jur 2d, Trial §§ 240, 244, 245.**

13. **Criminal Law § 1190 (NCI4th) — prior convictions — use to establish habitual felon and as aggravating factor**

Evidence of defendant's convictions of offenses punishable by imprisonment for more than sixty days was properly used to establish the status of habitual felon as well as to establish the aggravating factor of prior felony convictions to increase the presumptive sentence for the underlying felony. The status of habitual felon merely enhanced the punishment of another crime and was not a crime in and of itself, and the prior convictions were thus not essential elements of the crime for which defendant was convicted.

**Am Jur 2d, Criminal Law § 599; Habitual Criminals and Subsequent Offenders §§ 26, 27; Homicide § 554.**

14. **Criminal Law § 1337 (NCI4th)— capital case—prior conviction—circumstances admissible in penalty phase**

The State is entitled to present witnesses in the penalty phase of a capital trial to prove the circumstances of a prior conviction and is not limited to the introduction of evidence of the record of conviction.

**Am Jur 2d, Criminal Law § 599; Habitual Criminals and Subsequent Offenders §§ 26, 27; Homicide § 554.**

15. **Criminal Law § 1337 (NCI4th)— capital case—penalty phase—circumstances of prior conviction**

Testimony by a former SBI agent that he was informed while investigating a prior killing for which defendant pled guilty to voluntary manslaughter in 1971 that defendant had responded to his victim's request for help by telling him that "if he didn't die, he would shoot him again" was admissible in the penalty phase of a first degree murder trial to prove the circumstances of the crime for which defendant was convicted. Assuming *arguendo* that this testimony was inadmissible hearsay and violated defendant's right of confrontation, its admission was harmless error beyond a reasonable doubt where defendant did not dispute that he was convicted of the killing in 1971, and more probative and persuasive of defendant's character to the jury was evidence of recent sex offenses for which defendant was convicted, the cold-blooded calculation of the present crimes, and the senseless nature of the killing simply to facilitate the rape of a second victim.

**Am Jur 2d, Criminal Law § 599; Habitual Criminals and Subsequent Offenders §§ 26, 27; Homicide § 554.**

16. **Criminal Law § 1337 (NCI4th)— capital case—penalty phase—circumstances of prior convictions**

Testimony by an eyewitness to a prior killing to which defendant pled guilty to voluntary manslaughter that defendant went to his car and returned with a gun to shoot the victim and testimony by defendant's stepniece that defendant actually raped her in 1985 although he had pled guilty only to attempted second degree rape was admissible in the penalty phase of a first degree murder trial to prove the circumstances of the crimes for which defendant had been convicted.

Am Jur 2d, Criminal Law § 599; Habitual Criminals and Subsequent Offenders §§ 26, 27; Homicide § 554.

17. **Criminal Law § 85.2 (NCI3d)— character witnesses—cross-examination by State—knowledge of prior rape by defendant**

The State was properly permitted to elicit from defendant's character witnesses evidence that they heard an alleged rape victim say that defendant had raped her just three months prior to the rape charged in this case in order to rebut the witnesses' prior testimony as to defendant's good character by showing specific instances of defendant's conduct. N.C.G.S. § 8C-1, Rule 405(a).

Am Jur 2d, Criminal Law § 599; Witnesses § 503.

18. **Criminal Law § 1334 (NCI4th)— capital case—aggravating circumstances—prior crimes—notice not required**

The State is not required to give defendant specific notice of the particular convictions or even the aggravating circumstances it plans to rely upon in a capital case. The provisions of N.C.G.S. § 15A-2000(e)(3) and defendant's own personal knowledge of his criminal history provide defendant with adequate notice of what crimes might be presented as aggravating circumstances.

Am Jur 2d, Criminal Law § 599; Habitual Criminals and Subsequent Offenders § 19.

19. **Criminal Law § 1355 (NCI4th)— capital case—mitigating circumstance—no history of prior criminal activity—evidence of prior rape**

Testimony by a witness that defendant raped her and threatened to rape and kill her daughter just three months prior to the murder, kidnapping and rape in question was admissible in response to defendant's request that the court consider the N.C.G.S. § 15A-2000(f)(1) mitigating circumstance that defendant had no significant history of prior criminal activity.

Am Jur 2d, Criminal Law § 599; Homicide § 554.

20. **Criminal Law § 1347 (NCI4th)— capital case—course of conduct aggravating circumstance—not vague or overbroad**

The course of conduct aggravating circumstance for first degree murder set forth in N.C.G.S. § 15A-2000(e)(11) is not

unconstitutionally vague and overbroad on its face or as applied in this case.

**Am Jur 2d, Criminal Law § 599; Homicide § 554.**

21. **Criminal Law § 1322 (NCI4th)— capital case—mitigating circumstance—time served before parole for life sentence**

The trial court properly denied defendant's request that the jury in a first degree murder case be allowed to consider as a mitigating circumstance that defendant would serve at least twenty years before parole eligibility if sentenced to life imprisonment.

**Am Jur 2d, Criminal Law § 599; Homicide § 554.**

22. **Criminal Law § 1327 (NCI4th)— capital case—aggravating outweighing mitigating circumstances—finding death sentence inappropriate—instruction improper**

The trial court did not err in refusing to instruct the jury in a first degree murder case that even if it found that the aggravating circumstances outweighed the mitigating circumstances and that the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty, the jury could still determine that death was inappropriate punishment in this case.

**Am Jur 2d, Criminal Law § 599; Homicide §§ 554, 555.**

23. **Criminal Law § 1321 (NCI4th)— capital case—failure of jury to agree—life sentence—instruction not required**

The trial court did not err in failing to instruct the jurors that if they could not agree on a sentence to be imposed for first degree murder, a life sentence would be imposed.

**Am Jur 2d, Homicide §§ 513, 553, 555.**

24. **Criminal Law § 1326 (NCI4th)— capital case—mitigating circumstances—instruction on burden of proof**

The trial court in a capital case did not err in failing to instruct the jury that the State had the burden of proving the nonexistence of each mitigating circumstance beyond a reasonable doubt and in placing the burden of proof on defendant to prove each mitigating circumstance by a preponderance of the evidence.

**Am Jur 2d, Homicide § 555.**

25. **Criminal Law § 1352 (NCI4th)— capital case—mitigating circumstances—instruction requiring unanimity—harmless error**

Any error by the trial court in requiring the jury to unanimously find a mitigating circumstance before it could be meaningfully considered in defendant's favor in a capital case was harmless beyond a reasonable doubt where the jury found all of the mitigating circumstances presented by defendant and submitted to the jury.

**Am Jur 2d, Homicide § 555.**

26. **Criminal Law § 1298 (NCI4th)— constitutionality of death penalty statute**

The North Carolina death penalty statute, N.C.G.S. § 15A-2000, is neither unconstitutionally vague nor overbroad and is not applied in a discriminatory and discretionary manner.

**Am Jur 2d, Criminal Law § 628; Homicide § 556.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-Gregg cases. 65 ALR4th 838.**

27. **Criminal Law § 1373 (NCI4th)— death sentence not disproportionate**

A sentence of death imposed on defendant for first degree murder was not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant, where defendant was found guilty on theories of both felony murder and premeditation and deliberation; the murder was committed in order to allow defendant to commit a rape upon another victim; defendant fled the scene and made no effort to aid the victim; the jury found as aggravating factors that defendant had previously been convicted of crimes involving the use or threat of violence to the person and that the murder was part of a course of conduct involving other violent crimes; only three of the fifteen mitigating factors found by the jury were statutory and much of defendant's mitigating evidence related to his conduct after he was in jail and to his relationship with family and close friends; and the jury weighed this evidence against evidence that defendant had

previously been convicted of a killing in 1971, a felonious breaking and entering in 1982, and a sexual assault in 1985 and the fact that the present killing was accompanied by a kidnapping and rape of another person.

**Am Jur 2d, Criminal Law § 628; Homicide § 556.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-Gregg cases. 65 ALR4th 838.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Lamm, J.*, at the 17 June 1988 Criminal Session of Superior Court, BURKE County. Defendant's motion to bypass the Court of Appeals as to his convictions of first-degree rape and first-degree kidnapping as a habitual felon was allowed by this Court on 21 October 1988. Heard in the Supreme Court 9 October 1990.

*Lacy H. Thornburg, Attorney General, by Debra C. Graves, Associate Attorney General, for the State.*

*James R. Glover for defendant-appellant.*

MEYER, Justice.

In the early morning hours of 24 June 1987, after a heated confrontation with Ned Rader at Rader's mobile home near Morganton, defendant followed Rader after he left the mobile home. Rader stopped his truck, and defendant pulled his car alongside Rader. Words were exchanged between the occupants of the two parked vehicles; then defendant killed Rader with a single gunshot to the head from a nine-millimeter pistol. After killing Rader, defendant forcibly abducted the female passenger in Rader's truck. She was taken to a wooded area near defendant's home and raped. A jury found defendant guilty of first-degree murder, first-degree rape, and first-degree kidnapping as a habitual felon. After a sentencing proceeding, the jury recommended a sentence of death for the murder conviction. The trial court sentenced in accordance with the recommendation and, additionally, sentenced defendant to consecutive terms of life imprisonment for first-degree rape and for first-degree kidnapping as a habitual felon. We find no error.

On 23 June 1987, Judy Townsend moved away from the mobile home she had shared with her estranged husband. With Ned Rader's help, she moved her belongings into Rader's mobile home. At dusk, defendant, an acquaintance of Townsend, telephoned Townsend at Rader's and was given directions to Rader's home.

Defendant and Lester Wyatt arrived an hour later with beer and white liquor. After the four drank for a few hours, Townsend told the men she was tired and was going to bed. Defendant followed her into her bedroom, and Rader and Wyatt followed shortly thereafter. Townsend insisted that they all leave so she could go to bed. As defendant and Wyatt walked outside, Townsend heard defendant tell Wyatt, "I am going to kill Ned before the night's over with[;] . . . I want you to take this rifle and watch him and don't let him get out of the trailer. Don't you let him get by."

In response to defendant's threat, Townsend told Rader to stay in the bedroom. She again asked defendant to leave, and he refused. Defendant reentered the mobile home. He sat on a stool in the living room, with a gun in his lap, and said, "I'm not going to go . . . because before the night's over with, . . . I'm going to rape you and pistol-whip you with this gun if I have to go through Ned Rader to do it."

At approximately 2:00 a.m., Townsend managed to call her divorce attorney, who notified the Sheriff's Department. Upset at Townsend for "call[ing] the law" on him, defendant detached the telephone receiver when the phone subsequently rang. Townsend reattached the receiver and managed to place another phone call, this time to Karen Snyder, who also notified the Sheriff.

By this time, Ned Rader had armed himself with a shotgun and told defendant to leave. As defendant and Wyatt drove away, Rader shot twice above the top of their car.

When members of the Sheriff's Department arrived with Karen Snyder, they advised Rader to take out a warrant against defendant and left.

Shortly thereafter, Rader and Townsend began the drive to the Sheriff's Department in Rader's truck. Rader drove with the shotgun across his lap with the barrel pointing out the driver's side window. As they neared the highway, defendant's car appeared from behind and began gaining on them. Townsend lowered her head, and Rader stopped the vehicle. When defendant's car stopped

beside Rader's truck, words were exchanged, and defendant killed Rader with a single gunshot to the head from a nine-millimeter pistol belonging to Wyatt.

Defendant then appeared at the passenger side door of Rader's truck and ordered Townsend to get out. Upon her refusal, he broke the window with the stock of the pistol, unlocked the door, pulled her out of the truck, and struck her on the right side of the head with the gun. Defendant threatened to kill Townsend by morning because she "knew too much."

Roy Ray Willis, who lived nearby, testified that at approximately 4:30 a.m. he was awakened by a noise that sounded like a car accident. He telephoned the Sheriff's Department. Upon returning to his wife, she related that she had heard a woman say, "Are you going to shoot me, too?" Willis then telephoned the authorities again and relayed this additional information.

Defendant, Wyatt, and Townsend drove to defendant's mobile home, where Wyatt was instructed to remain. Defendant took Townsend into the woods, where he continued to threaten her life, ordered her to disrobe at gunpoint, and then raped her.

Based largely on pretrial statements given by Lester Wyatt, defendant contended that he acted in self-defense in killing Ned Rader. When Lester Wyatt failed to appear to testify in response to a subpoena and an extensive search, Wyatt's testimony was admitted in the form of the reading of his pretrial statements made separately in tape-recorded interviews with a detective of the county Sheriff's Department and defendant's counsel.

The jury returned verdicts finding the defendant guilty of first-degree murder, first-degree rape, and first-degree kidnapping as a habitual felon. Following a sentencing proceeding, the jury found two aggravating circumstances: (1) that defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3) (1988); and (2) that the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person, N.C.G.S. § 15A-2000(e)(11) (1988). The jury unanimously found all of the submitted mitigating circumstances to exist. On finding that the mitigating circumstances were not sufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial

to call for the death penalty, the jury recommended a sentence of death for the murder.

Defendant was also charged with being a habitual felon. At the hearing on this charge, the State offered into evidence defendant's Burke County criminal court record. Defendant had previous convictions in 1971 for voluntary manslaughter, in 1982 for felonious breaking or entering, and in 1985 for attempted second-degree rape. Defendant presented no evidence. The jury found defendant to be a habitual felon.

On 17 June 1988, defendant was sentenced to die for the murder of Ned Rader, in accordance with the jury's verdict. Defendant was also sentenced to life imprisonment for first-degree rape, that sentence to be served consecutive to the sentence imposed for the murder, and to life imprisonment for first-degree kidnapping as a habitual felon, that sentence to be served consecutive to the sentence imposed for rape.

### GUILT PHASE ISSUES

Since there is no dispute as to who fired the shot that killed Ned Rader, defendant notes that the central issue in this case is whether the fatal shot was fired in self-defense. Besides defendant and the deceased, only two people were present and eyewitnesses to the shooting. One eyewitness to the circumstances of Rader's death was Judy Townsend, who testified for the State. The other eyewitness was Lester Wyatt. Wyatt did not testify in person; consequently, the jury heard reading of the two unsworn statements that he had made prior to the trial.

### I.

Defendant contends that the trial court's denial of his motions for a recess or continuance and for a mistrial after Lester Wyatt could not be located denied him his sixth amendment right to compulsory process and due process under the United States Constitution and his comparable state constitutional rights. We conclude that these arguments have no merit.

A. *The Sixth Amendment and Procedural Due Process Rights of the United States Constitution*

[1] Generally, the granting of a continuance is within the sound discretion of the trial court. *Ungar v. Sarafite*, 376 U.S. 575, 11 L. Ed. 2d 921, *reh'g denied*, 377 U.S. 925, 12 L. Ed. 2d 217 (1964);

*Avery v. Alabama,* 308 U.S. 444, 84 L. Ed. 377 (1940). A significant limitation on that discretion occurs where denial of a continuance results in the violation of a defendant's right to due process or his sixth amendment right to compulsory process. The sixth amendment of the United States Constitution provides in pertinent part as follows:

> In all criminal prosecutions the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . .

U.S. Const. amend. VI. In *Washington v. Texas,* 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023 (1967), the United States Supreme Court noted that "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense."

Courts have discussed numerous factors which are weighed to determine whether the failure to grant a continuance rises to constitutional dimensions. Of particular importance are the reasons for the requested continuance presented to the trial judge at the time the request is denied. *Ungar v. Sarafite,* 376 U.S. at 589, 11 L. Ed. 2d at 931.

[2]   A continuance in a criminal trial essentially involves a question of procedural due process. Implicitly, the courts balance the private interest that will be affected and the risk of erroneous deprivation of that interest through the procedures used against the government interest in fiscal and administrative efficiency. *See generally Mathews v. Eldridge,* 424 U.S. 319, 47 L. Ed. 2d 18 (1976) (procedural due process standard).

When the individual interest at stake is the defendant's life or liberty, the individual interest is especially compelling. An interest such as, in this case, defendant's life is factored heavily into the analysis. *See, e.g., Ake v. Oklahoma,* 470 U.S. 68, 78, 84 L. Ed. 2d 53, 63 (1985).

On the other side of the scale, the government has an interest in procuring testimony within a reasonable time. *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. 1981); *see also Diggs v. Owens,* 833 F.2d 439, 444 (3d Cir. 1987) (in a first-degree murder and kidnapping case, government interest prevailed where excluded testimony was available from another source), *cert. denied,* 485 U.S. 979, 99 L. Ed. 2d 488, *reh'g denied,* 486 U.S. 1018, 100

L. Ed. 2d 220 (1988); *McKinney v. Wainwright*, 488 F.2d 28, 30 (5th Cir.) (in an assault with intent to commit murder case, government interest prevailed where defendant failed to articulate specific basis for request at time of motion for continuance), *cert. denied*, 416 U.S. 973, 40 L. Ed. 2d 562 (1974); *Taylor v. Minnesota*, 466 F.2d 1119, 1122 (8th Cir. 1972) (in a case involving an attempt to force a young woman to become a prostitute, government interest prevailed where there was no showing of a lack of diligence by the state), *cert. denied*, 410 U.S. 956, 35 L. Ed. 2d 689 (1973); *Allen v. Rhay*, 431 F.2d 1160, 1166 (9th Cir. 1970) (in a robbery case, government interest prevailed where defendant failed to preserve error in record), *cert. denied*, 404 U.S. 834, 30 L. Ed. 2d 64 (1971).

Where highly relevant and noncumulative evidence is excluded by the denial of the continuance, courts have often held that the defendant's constitutional rights outweighed the government's interest. *See, e.g., Bennett v. Scroggy*, 793 F.2d 772, 775-76 (6th Cir. 1986) (in a murder case, individual interest prevailed where missing witness' testimony was unique and noncumulative); *Dickerson v. Alabama*, 667 F.2d 1364, 1370-71 (11th Cir.) (in a robbery case, individual interest prevailed because inherent credibility of alibi testimony by police officer was not considered cumulative), *cert. denied*, 459 U.S. 878, 74 L. Ed. 2d 142 (1982); *Hicks v. Wainwright*, 633 F.2d 1146, 1148-50 (in a breaking and entering with intent to commit a felony and involuntary sexual battery case, individual interest prevailed where testimony was from defendant's only expert witness on issue of insanity defense). Moreover, cases have further shifted the balance away from the government's interest where significant culpability by the government is found. *See, e.g., Renzi v. Virginia*, 794 F.2d 155, 159 (4th Cir. 1986) (in a possession of PCP case, individual interest prevailed in due process challenge where government gave intentionally misleading information to defendant, who lost opportunity to produce critical witness); *Singleton v. Lefkowitz*, 583 F.2d 618, 624-26 (2d Cir. 1978) (in a possession of a dangerous drug case, individual interest prevailed where government improperly released defendant's witness from custody after his arrest pursuant to a material witness order), *cert. denied sub nom. Abrams v. Singleton*, 440 U.S. 929, 59 L. Ed. 2d 486 (1979); *United States v. Barker*, 553 F.2d 1013, 1018-23 (6th Cir. 1977) (in a bank robbery case, individual interest prevailed where government both did not exercise due diligence in securing presence of

expert witnesses and violated a stipulation not to make a certain related argument); *Shirley v. North Carolina*, 528 F.2d 819, 822 (4th Cir. 1975) (in a violation of state narcotics laws case, individual interest prevailed in due process challenge where government made clearly unsupported assertion that witness "might never be available").

[3] Lester Wyatt failed to appear in response to a timely and properly issued subpoena by the State. Subsequent extensive efforts made in good faith by the State to locate him were unsuccessful. Testimony at trial indicated that Wyatt had previously been known to hide out from authorities "until things calmed down or [until authorities] weren't looking for him any more." Additional testimony indicated that he was able to live in the woods for an extended period of time under conditions that others could not survive. The full foliage in the mountains added to the difficulty in locating him. There was no culpability by the State in this case, because the authorities had made extensive efforts to locate him after diligently serving him with a subpoena. In fact, there were warrants out for Wyatt's arrest on totally different charges in addition to the order for his arrest which the trial court issued in this case. Moreover, in light of the fact that Lester Wyatt's testimony was admitted into evidence by way of statements he had made in an interview with a detective of the county Sheriff's Department and, more importantly, statements he had made in an interview with defendant's counsel, the risk of error resulting from a denial of the continuance is significantly low here. We hold that the trial court neither abused its discretion nor violated defendant's constitutional rights to compulsory process or due process in denying the continuance.

B. *North Carolina Law*

The analogous North Carolina constitutional provision at issue is article I, section 23, which provides in pertinent part as follows:

> In all criminal prosecutions, every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony . . . .

N.C. Const. art. I, § 23.

A motion for a continuance is normally addressed to the sound discretion of the trial court, and its ruling will not be disturbed

on appeal absent a showing of an abuse of discretion. *State v. Rigsbee*, 285 N.C. 708, 208 S.E.2d 656 (1974).

In examining the denial of a motion for a continuance for constitutional error, North Carolina case law, like its federal counterpart, implicitly balances the individual interest and the risk of an erroneous deprivation of that interest in light of the procedure being used against the State's interest in fiscal and administrative efficiency. *See, e.g., State v. Barfield*, 298 N.C. 306, 321-22, 259 S.E.2d 510, 525-26 (1979) (in a murder case, State's interest prevailed where testimony of absent witness was available by way of deposition), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137, *reh'g denied*, 448 U.S. 918, 65 L. Ed. 2d 1181 (1980); *State v. Kuplen*, 316 N.C. 387, 403, 343 S.E.2d 793, 802 (1986) (in a first-degree sex offense, attempted first-degree rape, and assault with a deadly weapon with intent to kill inflicting serious injury case, State's interest prevailed where absent witness' testimony would not have materially aided defendant); *State v. Lee*, 293 N.C. 570, 574, 238 S.E.2d 299, 302 (1977) (in an armed robbery and aggravated kidnapping case, State's interest prevailed where defendant both failed to make adequate showing of the importance of the witness to the case and did not avail himself of the procedures for obtaining out-of-state witnesses); *State v. Rigsbee*, 285 N.C. 708, 711, 208 S.E.2d 656, 658-59 (in a possession with intent to distribute and distribution of drugs case, State's interest prevailed where the content of the testimony by the absent witness was not fully established at trial); *State v. Utley*, 223 N.C. 39, 45, 25 S.E.2d 195, 200 (1943) (in a murder case, State's interest prevailed where defendant had the benefit of witness' testimony in another form); *State v. Wellmon*, 222 N.C. 215, 216-17, 22 S.E.2d 437, 438 (1942) (in a capital rape case, State's interest prevailed where testimony of absent alibi witnesses, who were beyond the State's jurisdiction, was available through trial transcripts of *habeas corpus* proceedings).

This Court has also found either an abuse of discretion or constitutional error in denying a continuance. *State v. Smathers*, 287 N.C. 226, 214 S.E.2d 112 (1975); *State v. Twiggs*, 60 N.C. (Win.) 142 (1863).

Both *Twiggs* and *Smathers* are distinguishable from the instant case. In *Twiggs*, there was no indication either that the absent witness could not be found within a reasonable time or that the defendant received the benefit of the witness' testimony

in some other form. *Smathers* is likewise distinguishable because it involved witnesses whose only impediment to being located was that they were not within the jurisdiction. In *Smathers*, the absent witnesses apparently could have been procured within a reasonable time. In this case, the defendant had the benefit of the witness' statements to both the Sheriff's Department and his own counsel, and the evidence indicated that the witness had gone into hiding for a long period under circumstances indicating no likelihood of locating him within a reasonable period of time. We therefore hold that the trial court neither abused its discretion nor violated the North Carolina Constitution.

[4] Defendant further contends that the trial court's denial of funds for an investigator to help him locate Wyatt violated his constitutional right to compulsory process and due process when Wyatt failed to appear at trial. We hold that defendant's use of Wyatt's statements sufficiently lessened the need to have Wyatt in person, such that the denial of funds for an investigator was neither an abuse of discretion nor a constitutional violation.

The leading federal case on point is *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53. In *Ake*, the United States Supreme Court balanced the private interest and the risk of erroneous deprivation of that interest if additional safeguards were not provided against the government's interest that would be affected if the safeguard were provided. *Id.* at 77, 84 L. Ed. 2d at 62 (citing *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18). The Court held that the state is obligated to provide the defendant a psychiatrist's assistance at state expense when the defendant makes a preliminary showing that his sanity is likely to be a "significant factor" in his defense. *Id.* at 83, 84 L. Ed. 2d at 66. Subsequently, this Court, consistent with post-*Ake* decisions, has held that in addition to a threshold showing of a "significant factor," which has been interpreted to mean a "specific necessity," the defendant "must demonstrate either that without expert assistance he will be deprived of a fair trial, or that there is a reasonable likelihood that it will *materially* assist him in the preparation of his case." *State v. Bridges*, 325 N.C. 529, 531, 532, 385 S.E.2d 337, 338 (1989) (citing *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986)).

Both *Ake* and *Bridges* are sufficiently distinguishable from the case at hand in that they involved situations where the testimony sought was not available in any other reasonable form to assist

the defendant. In *Ake*, without an expert witness, defendant had no other credible evidence to establish the critical element of his defense. Therefore, the testimony proffered by the expert witness in *Ake* would certainly have been a significant factor in defendant's defense. *Ake v. Oklahoma*, 470 U.S. at 82-83, 84 L. Ed. 2d at 65-66. In the instant case, defendant had the benefit of statements made to both the Sheriff's Department and defendant's own counsel.

*Bridges* is likewise distinguishable. In *Bridges*, fingerprints at the crime scene were the critical link connecting the defendant to the crime. In *Bridges*, we held that a fingerprint expert would have materially assisted the indigent defendant in preparing his case. *State v. Bridges*, 325 N.C. at 532-33, 385 S.E.2d at 339. We noted in *Bridges* that the fingerprint evidence was crucial to the State's case, and the nature of that evidence required that defendant have the right to an independent expert to assess that evidence. *Id.* While the defendant in *Bridges* was unable to interpret the fingerprint evidence without assistance, the defendant in this case had the benefit of a substantial portion of Wyatt's testimony by means of the introduction of his pretrial statements. In addition, the witness in this case was unlikely to be discovered, given the evidence of his flight and the significant good faith efforts which had been expended by the Sheriff and others. Unlike *Bridges*, the burden on the State's interest in fiscal and administrative efficiency was great, given the likelihood of an extended delay in locating the witness. We hold that under the facts of this case, there was no error in denying the motion for a continuance.

II.

[5] Defendant next argues that he was denied his due process right to a fair and impartial jury, to effective assistance of counsel, and to be present at every stage of the trial because the trial court supplemented the jury venire with venire persons who had been sitting in a different courtroom. This assignment of error is without merit.

In this case, when the trial judge determined that the venire pool was too small to allow a jury to be selected, he ordered that additional venire persons be selected at random from an array which was present for the trial of other cases in an adjoining courtroom. The jurors selected from the adjoining courtroom had already been sworn but not impaneled or selected for another case when they were summoned to defendant's trial.

Defendant relies on *State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987), apparently contending that any communication with a juror, even by another trial judge in another courtroom, violates the defendant's right to be present at every stage of his trial. *Payne* involved an *ex parte* communication by the presiding trial judge with a jury that was sitting on the case after the close of all the evidence. In the instant case, the jurors in issue were merely sworn by another judge in another courtroom. There was no possibility of improper communication by the presiding trial judge with a juror sitting on the defendant's case such that defendant's rights were compromised.

## III.

[6] Defendant next contends that the trial court improperly admitted portions of witness Roy Willis' testimony, which he asserts were inadmissible hearsay and violated defendant's constitutional right to confrontation. Willis and his wife were apparently awakened by the gunshot that killed Ned Rader. At issue is a statement allegedly made by Judy Townsend that was heard by Roy Willis' wife. Apparently, as Townsend was confronted by defendant, Mrs. Willis heard Townsend exclaim, "Are you going to shoot me, too?" After Mrs. Willis related this additional information to her husband, Roy Willis called the Sheriff's Department for the second time in the early morning hours of 24 June 1987.

Defendant objected to the admission of Mr. Willis' testimony, but the trial court admitted it with a limiting instruction that the testimony was "not to show the truth of what was stated but to show what [Willis] told the Burke County Sheriff's Department." Defendant contends that the evidence, admitted for that purpose, is not relevant to any issue in the case.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988). The value of the evidence need only be slight. *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989). "In criminal cases, every circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *State v. Hamilton*, 264 N.C. 277, 286-87, 141 S.E.2d 506, 513 (1965), *cert. denied*, 384 U.S. 1020, 16 L. Ed. 2d 1044 (1966).

In order to be relevant, testimonial evidence need not bear directly on the question in issue if it is helpful to understand the conduct of the parties, their motives, or if it reasonably allows the jury to draw an inference as to a disputed fact. *State v. Arnold*, 284 N.C. 41, 47-48, 199 S.E.2d 423, 427 (1973). This Court has held that out-of-court statements offered to explain the conduct of a witness are relevant and admissible. *State v. Potter*, 295 N.C. 126, 132, 244 S.E.2d 397, 401-02 (1978) (witness' testimony as to a threat to her husband admissible to explain her subsequent conduct in calling the police).

The evidence in this case shows that defendant killed the victim, then drove away with Townsend and Wyatt. Thus, the ultimate issue for the jury, on the kidnapping charge, was whether Townsend consented to leaving with defendant or was forcibly abducted. Whether Townsend was forced to get out of the truck and into defendant's car is in dispute. While evidence of commotion at the scene necessitating a second telephone call to the Sheriff's Department does not bear directly upon the ultimate question before the jury, it does tend to throw some light upon the crime and defendant's conduct and motives. We hold that the evidence was relevant for the limited purpose of showing that a statement was made which caused Mr. Willis to call the Sheriff's Department a second time in the early morning hours of 24 June 1987. Defendant does not argue or contend that this evidence, though relevant, was more prejudicial than probative.

Having determined that the evidence is relevant for a purpose other than its truth, we now turn to consider defendant's contention that the statement was inadmissible hearsay.

An out-of-court assertion offered for any relevant purpose other than the truth of the matter asserted may be admissible. The commentary to N.C.G.S. § 8C-1, Rule 801, provides: "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." *See also* 1 Brandis on North Carolina Evidence § 141 (1988). We hold that the trial court properly instructed the jury that the testimony could be used for the limited purpose of explaining why the witness called the Sheriff's Department a second time and not for the purpose of establishing the truth of any implied assertion made by Judy Townsend.

STATE v. ROPER

[328 N.C. 337 (1991)]

Defendant contends that the prosecutor's use of Mr. Willis' statement during his closing argument confirms defendant's argument that the statement was admitted for substantive purposes. The reference to Mr. Willis' statement in the prosecutor's two closing arguments is as follows:

> He said he was awakened that night; that he heard a woman's voice. . . . He remembers that he made a phone call to the sheriff and that after hearing, "Are you going to shoot me, too," he ran back in and he made a second call to the sheriff's department . . . . And the important thing I say to you is everything he said but particularly, she was very upset and scared, "Are you going to shoot me, too."

Assuming, *arguendo*, that the prosecutor's argument may have approached the limit of the legitimate use of Mr. Willis' statement, it drew no objection from defendant. Thus, defendant waived any error. Moreover, the trial judge's instruction at the time the testimony was offered properly and explicitly limited the statement's use.

[7] We now turn to address the defendant's confrontation clause argument as to this evidence. The United States Supreme Court has specifically addressed the circumstance of a statement offered not for its truth, but as proof that the statement had been made:

> Neither a hearsay nor a confrontation question would arise had [the witness'] testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the *proof of fact* through extrajudicial statements. From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.

*Dutton v. Evans*, 400 U.S. 74, 88, 27 L. Ed. 2d 213, 226 (1970) (emphasis added).

As previously noted, the statement, "Are you going to shoot me, too?" was admissible for the limited purpose of showing that there was a commotion at the scene of the crime, thereby inferring a forcible abduction of Townsend. The testimony here was used merely to show that the statement had been made and its effect

on the witness. Since the trial judge limited the jury's consideration of the statement and Mr. Willis was subject to cross-examination as to what he had heard, we hold that the use of the statement for this limited purpose did not violate defendant's right to confront witnesses against him.

Assuming, *arguendo*, that the statement was inadmissible hearsay, it was harmless beyond a reasonable doubt. The statement infers no more than that the defendant shot Rader, and this was never disputed. Defendant himself admits that he shot Rader; he claims, however, that he shot him in self-defense.

## IV.

[8] Defendant next takes exception to the trial court's admission of a deputy sheriff's testimony as to what Ned Rader had told him the day he died. The deputy testified that Rader told him that defendant had threatened his life and had threatened to rape Townsend. Defendant argues that the evidence was not admissible under the residual exception to the hearsay rule, as the trial court found, and that the evidence was admitted in violation of his sixth amendment right to confront any witnesses against him. We hold that the testimony was admissible under the residual exception to the hearsay rule.

For evidence to be admissible under the residual exception to the hearsay rule, the following factors are considered: (1) the declarant's personal knowledge of the underlying event, (2) the declarant's motivation to speak the truth, (3) whether the declarant recanted, and (4) the reason for the declarant's unavailability. *State v. Nichols*, 321 N.C. 616, 365 S.E.2d 561 (1988). In the instant case, Ned Rader, the declarant, was present during the events that he related to the sheriff's deputy. Rader's motivation to tell the truth is supported by the fear for his life, which caused him to send Townsend to call the authorities in the first place. Moreover, the evidence indicates that Rader was proceeding to the magistrate's office when he was killed, which supports the contention that he legitimately feared for his life. Rader never recanted the statements, and his unavailability was as a result of his death at the hands of the defendant.

Defendant argues that the statement's trustworthiness is questionable because of discrepancies between Rader's statement and statements made by Townsend and Wyatt. Primarily, the discrepan-

cies relate to the circumstances causing Rader to be in the back of the mobile home. We need not go into the specific details, but we point out that Rader's statements are substantially corroborated such that, in context, the testimony is sufficiently trustworthy.

[9] In response to defendant's confrontation clause argument as to this evidence, we must examine the scope of the constitutional right that he asserts. The sixth amendment to the United States Constitution provides in pertinent part as follows:

In all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .

U.S. Const. amend. VI.

While defendant does not assert a violation of the North Carolina Constitution, it contains a similar provision:

In all criminal prosecutions, every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony . . . .

N.C. Const. art. I, § 23.

The United States Supreme Court has set out certain broad standards that govern the constitutionality of the admission of hearsay in criminal prosecutions. Hearsay must contain "indicia of reliability." *Idaho v. Wright*, 497 U.S. ---, ---, 111 L. Ed. 2d 638, 651-53 (1990); *see generally* McCormick on Evidence § 252 (1984). The Court has indicated that hearsay statements that fall within a "firmly rooted hearsay exception" inherently possess an "indicia of reliability." *Compare Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608 (1980) (former testimony did not violate the confrontation clause where government carried burden of showing declarant's unavailability to testify at trial and defendant "cross-examined" the witness at preliminary hearing) *and United States v. Bourjaily*, 483 U.S. 171, 182-84, 97 L. Ed. 2d 144, 157-58 (1987) (co-conspirator's statement did not violate the confrontation clause where statement met requirements of federal Rule 801(d)(2)(E) — the co-conspirator exception) *with Idaho v. Wright*, 497 U.S. ---, 111 L. Ed. 2d 638 (residual hearsay exception is not "firmly rooted hearsay exception" and violated confrontation clause absent showing of "particularized guarantees of trustworthiness").

Assuming that a statement does not fall within the category of a "firmly rooted hearsay exception," the Court has provided

some guidance on an alternative method of showing "indicia of reliability":

> [T]he "indicia of reliability" requirement could be met in either of two circumstances: where the hearsay statement "falls within a firmly rooted hearsay exception," or where it is supported by "a showing of particularized guarantees of trustworthiness."

*Idaho v. Wright*, 497 U.S. at ---, 111 L. Ed. 2d at 653. These guarantees of trustworthiness are based on a consideration of the totality of the circumstances but "only those that *surround the making of the statement* and that render the declarant particularly worthy of belief." *Id.* at ---, 111 L. Ed. 2d at 655 (emphasis added).

We note that, although the residual exception is not a firmly rooted hearsay exception, the deputy sheriff's discussion with Rader contained "particularized guarantees of trustworthiness." *Id.* at ---, 111 L. Ed. 2d at 654-60. No evidence was presented that the statement was made to the deputy sheriff in response to leading questions or that the deputy had a preconceived notion of what would be disclosed during the conversation regarding defendant's actions. Under the totality of the circumstances, the declarant's truthfulness is sufficiently clear that cross-examination at the time of the statement would be of marginal utility. Moreover, even if the evidence were improperly admitted, there was other evidence to the same effect from Townsend corroborating this testimony by Rader; and thus the error, if any, was harmless beyond a reasonable doubt.

## V.

Defendant next contends that the search of his mobile home, with Lester Wyatt's consent, by the Burke County Sheriff's Department violated his fourth amendment right to be free from unreasonable searches and seizures and that the evidence of the search, which disclosed the clothing and a shotgun, was improperly admitted by the trial court. We conclude that the trial court properly admitted the evidence.

N.C.G.S. § 15A-974 provides that unlawfully obtained evidence may be suppressed, upon timely motion, if its exclusion is required by the United States Constitution or the North Carolina Constitution. The defendant has the burden of establishing that the motion to suppress is both timely and in proper form. *State v. Satterfield*, 300 N.C. 621, 624-25, 268 S.E.2d 510, 513-14 (1980); *State v. Simmons*,

59 N.C. App. 287, 296 S.E.2d 805 (1982), *cert. denied*, 307 N.C. 701, 301 S.E.2d 395 (1983).

**[10, 11]**  In this case, the State did not give the defendant notice prior to trial that it would offer evidence from the consent search of defendant's residence. The absence of notice allowed the defendant to make a motion to suppress for the first time during trial. N.C.G.S. § 15A-975(b) (1988). Therefore, defendant's objection was timely, but it was not in proper form. A motion to suppress made at trial, whether oral or written, should state the legal ground upon which it is made. While an affidavit is not required for a motion timely made at trial,[1] the defendant must, however, specify that he is making a motion to suppress and request a voir dire. Defendant never made a motion to suppress and never requested a voir dire. The record in this case reveals only a general objection and motion to strike that failed to state any legal or factual basis for the objection. This provides a sufficient ground for upholding the trial court's ruling.

### VI.

**[12]**  In defendant's sixth assignment of error, he argues for a new trial, alleging that the prosecutor improperly commented on the exercise of defendant's constitutional right to remain silent. We hold that the prosecutor's comments were not improper in the context in which they were made and note that any possible error by the prosecutor was quickly cured by the trial judge. The relevant portion of the prosecutor's argument is as follows:

> [PROSECUTOR]: — He asked him about that point when they leave the trailer. When they're run off from the trailer. And Wyatt (sic) says, "You look like an intelligent man. You didn't ask Jim what the hell Ned was shooting at him for." "No, he was in kind of an ill mood and I figured he'd tell me later."

---

1. In *State v. Satterfield*, the Court stated: "[A] motion to suppress made at trial, whether oral or written, should state the legal ground upon which it is made and should be accompanied by an affidavit containing facts supporting the motion." *Satterfield*, 300 N.C. 621, 625, 268 S.E.2d 510, 514 (1980). To the extent that this language suggests a requirement for an affidavit when the motion to suppress is made at trial, as here, it is hereby disapproved. Moreover, the Court of Appeals, in interpreting *Satterfield*, stated: "A motion without such a supporting affidavit may be summarily denied." *State v. Simmons*, 59 N.C. App. 287, 290, 296 S.E.2d 805, 808 (1982), *cert. denied*, 307 N.C. 701, 301 S.E.2d 395 (1983). This aspect of *Simmons* is overruled.

"Jim was." "Yeah." [Defense counsel] then tells Mr. Wyatt, "You just figured it was something that would pass." Wyatt, "Yeah." Jim Roper was in an ill mood. Jim Roper hadn't got what he wanted. And on top of not getting what he wanted — on top of not getting — of not being able to rape Judy Townsend right there in the trailer, he'd been run off. Man had shot at him and run him off so he was mad. He was mad as hell. [Sheriff's detective] asked him how long did it take him to calm down. Wyatt, "Thirty or forty-five minutes. Set there and drank and drank [sic] a beer. Calmed down a little." Now, in his opening remarks to you, [defense counsel] mentioned to that, well, the State didn't present to you Mr. Wyatt. State either didn't want to present him or they just didn't present him. Well, Jim Roper — James Roper tells you — he says I've got a defense. He says it's self-defense. If he's got a self-defense, then let him present it. The State—

[DEFENSE COUNSEL]: —OBJECTION, Your Honor.

THE COURT: —SUSTAINED. Members of the jury, do not consider any reference to any—

[PROSECUTOR]: —I'm talking about Mr. Wyatt.

THE COURT: —Just a minute.

[PROSECUTOR]: —I'm sorry, Your Honor.

THE COURT: —I will give you instructions that cover that in my instructions when he completes his argument but you're not to consider any allegation or argument that the defendant has failed to do anything.

In considering the prosecutor's closing argument in context, it becomes apparent that the prosecutor was responding to defendant's assertion that the State's case rested solely on Judy Townsend's testimony. Under those circumstances, it was not inappropriate for the prosecutor to point out that the witness to defendant's alleged acts of self-defense had not come forward to testify. We hold that the prosecutor's remarks were not a comment on defendant's failure to testify. Moreover, any prejudice was cured by the trial court's limiting instructions and subsequent jury instructions.

**STATE v. ROPER**

[328 N.C. 337 (1991)]

## NONCAPITAL SENTENCING ISSUE

**[13]**  Defendant argues that the trial court improperly applied an aggravating factor to his conviction for kidnapping. Defendant was convicted of kidnapping as a habitual felon. The trial court applied the punishment-enhancing factor of habitual felon to the kidnapping conviction, elevating the kidnapping conviction from a class D felony to a class C felony, in accordance with N.C.G.S. § 14-7.6. The trial court also found the aggravating factor of prior conviction of offenses punishable by imprisonment for more than sixty days and imposed the maximum sentence for a class C felony, which was life imprisonment. *See* N.C.G.S. § 15A-1340.4 (1988). Defendant notes that the same felonies were used to establish both the aggravating factor and the habitual felon status.

Defendant cites *State v. Blackwelder*, 309 N.C. 410, 306 S.E.2d 783 (1983), wherein this Court held that the trial judge erred in finding an element of the crime also to be a factor in aggravation. In *Blackwelder*, defendant was convicted of assault with a deadly weapon, and the trial court found that the defendant had used a deadly weapon as a factor in aggravation.

We have previously held that factors which relate to *"the character or conduct of the offender"* may become the basis for increasing or decreasing a presumptive term. *State v. Chatman*, 308 N.C. 169, 180, 301 S.E.2d 71, 78 (1983) (citing *State v. Ahearn*, 307 N.C. 584, 300 S.E.2d 689 (1983)). However, a significant limitation on that general rule is that an essential element of the underlying crime may not also be asserted as an aggravating factor for that crime, since those factors were presumably considered in determining the presumptive sentence for the offense. *State v. Blackwelder*, 309 N.C. at 418, 306 S.E.2d at 789.

Here, the status of habitual felon merely enhances the punishment of another crime, and that status is not a crime in and of itself. The *Blackwelder* limitation thus does not apply because these convictions for prior crimes were not essential elements of the crimes for which defendant was convicted. We hold that the evidence of defendant's prior crimes was properly used to establish the status of a habitual felon as well as to establish the aggravating factor of prior felony convictions to increase the presumptive sentence of the underlying felony.

STATE v. ROPER

[328 N.C. 337 (1991)]

CAPITAL SENTENCING ISSUES

[14, 15] In proving the aggravating circumstance that "defendant had been previously convicted of a felony involving the use or threat of violence to the person," N.C.G.S. § 15A-2000(e)(3) (1988), the State presented testimony of a former SBI agent who had investigated a prior felony of which defendant had been convicted. Defendant contends that he was prejudiced when the trial court allowed the former SBI agent to testify as to a statement that had been related to him by an unidentified declarant while the agent was investigating the prior killing for which defendant was convicted in 1971. The former SBI agent testified that defendant had responded to his victim's request for help by telling him that "if he didn't die, he would shoot him again." Defendant contends that the admission of this evidence violates his rights under the United States Constitution. Defendant argues that only the record of the prior crime should have been admitted, and in any event, the testimony was inadmissible hearsay and violated defendant's constitutional right to confront witnesses against him. We disagree and hold that evidence of the circumstances of prior crimes is admissible to aid the sentencer. Moreover, we note that the evidence in issue was admissible because it was relevant to sentencing. Assuming, *arguendo*, that the evidence was admitted in violation of defendant's sixth amendment right to confront the declarant, it was harmless beyond a reasonable doubt.

Defendant first contends that in establishing aggravating circumstances, the State is limited to presenting only the record evidence of prior crimes and not the *circumstances* of those crimes. Defendant notes that he had pled guilty to voluntary manslaughter in that killing and argues that the trial court's admission of evidence of the circumstances of the prior crime violated his rights to due process and freedom from cruel and unusual punishment.

In *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L. Ed. 2d 1456 (1983), this Court addressed essentially the same question presented here, that of whether the State could introduce evidence of the circumstances of a prior murder when the defendant had stipulated to having been found guilty of the charge. *See also State v. Green*, 321 N.C. 594, 610-12, 365 S.E.2d 587, 597, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988); *State v. McDougall*, 308 N.C. 1, 17-23, 301 S.E.2d 308, 318-22, *cert. denied*,

464 U.S. 865, 78 L. Ed. 2d 173 (1983). The *Taylor* Court found no error in admitting an autopsy report to prove certain aggravating circumstances:

> The objection made by defendant is that, as he had stipulated the fact of his prior conviction, the State should not have been allowed to introduce testimony concerning the murder. The State argues that when proving as an aggravating circumstance that defendant was previously convicted of a capital felony or of a felony involving the use or threat of violence to the person (G.S. 15A-2000(e)(2) and (3)), the State should not be limited to admission of the court record of conviction.
>
> We think the better rule here is to allow both sides to introduce evidence in support of aggravating and mitigating circumstances which have been admitted into evidence by stipulation. If the capital felony of which defendant has previously been convicted was a particularly shocking or heinous crime, the jury should be so informed.

*State v. Taylor*, 304 N.C. at 279, 283 S.E.2d at 780.

Consistent with prior decisions of this Court, the State is entitled to present witnesses in the penalty phase of the trial to prove the circumstances of prior convictions and is not limited to the introduction of evidence of the record of conviction. We hold that the testimony of the circumstances of the prior killing was admissible in the penalty phase of the trial.

Defendant next contends that the defendant's statement made at the prior killing presented in the former SBI agent's testimony was inadmissible hearsay and violated his right of confrontation. Assuming, *arguendo*, that the admission of this evidence was error, it was harmless. In the context of all the evidence presented at trial, we find that the error was not prejudicial. Defendant does not dispute that he was convicted of the killing in 1971. We conclude that much more probative and persuasive of defendant's character to the jury was the evidence of the recent sex offense for which defendant was convicted, the cold-blooded calculation of the present crimes, and the senseless nature of the killing, that is, simply to facilitate the rape of Townsend. We note that the jury deliberated for less than one hour during the guilt phase of this trial before returning guilty verdicts of first-degree murder, first-degree kidnapping, and first-degree rape. During the sentencing phase of

the trial, when the alleged error occurred, the jury deliberated just under one hour and fifteen minutes. We hold that, assuming the admission of the testimony was error, it was harmless beyond a reasonable doubt.

[16] Defendant also objects to two other statements offered by the State to prove circumstances in aggravation that the trial court admitted. In one, an eyewitness to the previous killing to which defendant pled guilty to voluntary manslaughter testified that defendant went to his car and returned with a gun to shoot the victim. In the other statement, defendant's stepniece testified that in 1985 defendant actually raped her, although in that prior case defendant had pled guilty to attempted second-degree rape. For the reasons previously stated, we also hold these statements were admissible to prove the circumstances of the crimes for which defendant had been convicted.

[17] Defendant next contends that evidence of yet another alleged prior rape by the defendant, three months prior to the incident charged in this case, was improperly admitted. We disagree. After defendant presented testimony as to his good character, the State cross-examined his character witnesses and elicited from each of them evidence that they heard the alleged rape victim say that defendant had raped her just three months prior to the rape charged in this case. Defendant argues that the testimony was offered to prove the truth of the matter asserted and is therefore inadmissible hearsay. We note that the evidence was offered for impeachment purposes and was admissible to show the witnesses' knowledge of specific instances of defendant's conduct to rebut the witnesses' prior testimony as to defendant's good character. See N.C.G.S. § 8C-1, Rule 405(a) (1988); State v. Gappins, 320 N.C. 64, 68-70, 357 S.E.2d 654, 657-59 (1987).

[18] Defendant also contends that he should have been notified of the aggravating circumstances the State would attempt to prove during sentencing and reminds us that he made a pretrial motion to this effect. This Court has previously held that the State is not required to give the defendant specific notice of the particular convictions or even the aggravating circumstances that it plans to rely upon. State v. Young, 312 N.C. 669, 674-77, 325 S.E.2d 181, 184-86 (1985); State v. Brown, 306 N.C. 151, 183-84, 293 S.E.2d 569, 589-90, cert. denied, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982); State v. Taylor, 304 N.C. 249, 256-58, 283 S.E.2d 761, 767-68. The

provisions of the statute, N.C.G.S. § 15A-2000(e)(3) (1988), and defendant's own personal knowledge of his criminal history provide defendant with adequate notice of what crimes might be presented as aggravating circumstances. We hold that the trial court properly denied defendant's request.

[19]    Finally, defendant contends that the alleged 1987 rape victim should not have been allowed to testify that defendant raped her and threatened to rape and kill her daughter just three months prior to the rape charged here, a crime for which defendant has never been convicted. The statement was not offered by the State as an aggravating circumstance, but was offered in response to defendant's request that the court consider mitigating circumstance N.C.G.S. § 15A-2000(f)(1)—that defendant had no significant history of prior criminal *activity*. It was clearly admissible for that purpose. We note that after this evidence was presented, defendant withdrew his request for this mitigating circumstance.

## PRESERVATION ISSUES

[20]    Defendant brings forward seven issues for preservation purposes. First, defendant contends that N.C.G.S. § 15A-2000(e)(11) is unconstitutionally vague and overbroad on its face and as applied. N.C.G.S. § 15A-2000(e)(11) establishes an aggravating circumstance if the jury finds that the murder was committed as a "part of a course of conduct in which defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons." This Court has previously rejected the argument that the provision is unconstitutional on its face. *State v. Williams*, 305 N.C. 656, 684-86, 292 S.E.2d 243, 260-61, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983). In regard to defendant's argument that the statute is vague and overbroad as applied, we hold that, based on the evidence and the procedure in this case, defendant's assignment of error is without merit.

[21]    Second, defendant contends that the trial court erred in denying his request that the jury be allowed to consider as a mitigating circumstance that defendant would serve at least twenty years before parole eligibility if sentenced to life imprisonment. This issue has previously been decided against defendant. *State v. McNeil*, 324 N.C. 33, 42-44, 375 S.E.2d 909, 915-16 (1989), *sentence vacated on other grounds in light of McKoy*, --- U.S. ---, 108 L. Ed. 2d

756 (1990) (mem.); *State v. Robbins,* 319 N.C. 465, 517-23, 356 S.E.2d 279, 310-13, *cert. denied,* 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

[22]   Third, defendant contends that the trial court erred in refusing to instruct the jury that even if it found that the aggravating circumstances outweighed the mitigating circumstances and that the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty, the jury could still determine that death was inappropriate punishment in this case. This Court has previously decided this issue adversely to defendant. *State v. Holden,* 321 N.C. 125, 160, 362 S.E.2d 513, 535 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988).

[23]   Fourth, defendant contends that the trial court erred in failing to instruct the jurors that if they could not agree on a sentence to be imposed, a life sentence would be imposed. We have previously held that *"upon inquiry by the jury* the trial court must inform the jurors that their inability to reach a unanimous verdict should not be their concern but should simply be reported to the court." *State v. Smith,* 320 N.C. 404, 422, 358 S.E.2d 329, 339 (1987). As we have previously noted, to instruct the jury otherwise would be "tantamount to 'an open invitation for the jury to avoid its responsibility and to disagree.' " *State v. Smith,* 305 N.C. 691, 710, 292 S.E.2d 264, 276, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982) (quoting *Justus v. Commonwealth,* 220 Va. 971, 979, 266 S.E.2d 87, 92 (1980)), *quoted in State v. Smith,* 320 N.C. at 421-22, 358 S.E.2d at 339.

[24]   Fifth, defendant contends that the trial court erred in failing to instruct the jury that the State had the burden of proving the nonexistence of each mitigating circumstance beyond a reasonable doubt and in placing the burden of proof on defendant to prove each mitigating circumstance by a preponderance of the evidence. We have previously considered this contention and have decided it adversely to defendant. *State v. Holden,* 321 N.C. 125, 158-59, 362 S.E.2d 513, 534; *State v. Barfield,* 298 N.C. 306, 353, 259 S.E.2d 510, 543; *State v. Johnson,* 298 N.C. 47, 75-76, 257 S.E.2d 597, 617-18 (1979).

[25]   Sixth, defendant contends that the trial court's instructions requiring the jury to unanimously find a mitigating circumstance before it could be meaningfully considered in defendant's favor deprived defendant of his right to a reliable sentencing determination, his right to due process of law, and his right to be free

**STATE v. ROPER**

[328 N.C. 337 (1991)]

from cruel and unusual punishment. We hold that since the jury found all submitted mitigating circumstances, any error was harmless beyond a reasonable doubt.

Taking note of the United States Supreme Court decision in *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988), the trial court repeatedly instructed the jury to consider essentially whether

> any aggravating circumstances you have found are sufficiently substantial to call for the imposition of the death penalty when considered with any mitigating circumstances *present in this case.*

(Emphasis added.) However, after each of fifteen mitigating circumstances, the trial court gave substantially the following instruction:

> If you do not unanimously find this mitigating circumstance by a preponderance of the evidence, you will so indicate by having your foreman write no in that space.

Later, the trial court summarized as follows:

> Issue four is do you unanimously find, beyond a reasonable doubt, that the aggravating circumstance or circumstances found by you is or are sufficiently substantial to call for the imposition of the death penalty when considered with any mitigating circumstance or circumstances *present in this case.*
>
> In deciding this issue, you're not to consider the aggravating circumstances standing alone. You must consider them in connection with any mitigating circumstances *present in this case. In answering this last question, no juror is precluded from considering and weighing anything in mitigation that he or she finds to exist by a preponderance of the evidence, even if that mitigating circumstance was not unanimously agreed upon by the jury under issue two above.*
>
> . . . .
>
> Again, when making this final balancing, *each juror may consider any circumstance in mitigation that juror determines to exist by a preponderance of the evidence, whether or not that circumstance was found to exist unanimously by the jury in issue two.* After so doing, if you are satisfied, beyond a

reasonable doubt, that the aggravating circumstances found by you are sufficiently substantial to call for the death penalty, it would be your duty to answer the issue yes.

If you are not so satisfied or have a reasonable doubt, it would be your duty to answer the issue no.

*In the event none of you find* the existence of any mitigating circumstances, you must still answer this fourth issue. In such case you must determine whether the aggravating circumstances found by you are of such value, weight, importance, consequence, or significance as to be sufficiently substantial to call for the imposition of the death penalty.

(Emphasis added.)

Defendant notes that the United States Supreme Court has held that the requirement of unanimity by the jury as to each mitigating circumstance violates defendant's eighth amendment rights because one juror could effectively preclude the others from considering a given mitigating circumstance. *McKoy v. North Carolina,* 494 U.S. 433, 108 L. Ed. 2d 369 (1990); *Mills v. Maryland,* 486 U.S. 367, 100 L. Ed. 2d 384.

The State contends, and we agree, that since the jury found every one of the fifteen mitigating circumstances presented by defendant, any constitutional error is harmless beyond a reasonable doubt. *See, e.g., Franklin v. Lynaugh,* 487 U.S. 164, 101 L. Ed. 2d 155, *reh'g denied,* 487 U.S. 1263, 101 L. Ed. 2d 976 (1988); *Mills v. Maryland,* 486 U.S. 367, 100 L. Ed. 2d 384; *Demps v. Dugger,* 874 F.2d 1385, 1388-90 (11th Cir. 1989), *cert. denied,* --- U.S. ---, 108 L. Ed. 2d 963 (1990).

[26]    Seventh, defendant contends that the North Carolina death penalty statute, N.C.G.S. § 15A-2000 (1988), is unconstitutionally vague and overbroad and is applied in a discriminatory and discretionary manner. This Court has recently held that the North Carolina death penalty statute is neither unconstitutionally vague nor overbroad and is not applied in a discriminatory and discretionary manner. *State v. Artis,* 325 N.C. 278, 335-36, 384 S.E.2d 470, 503 (1989), *sentence vacated on other grounds in light of McKoy,* --- U.S. ---, 108 L. Ed. 2d 604 (1990); *State v. McLaughlin,* 323 N.C. 68, 102, 372 S.E.2d 49, 71 (1988), *sentence vacated on other grounds in light of McKoy,* --- U.S. ---, 108 L. Ed. 2d 601 (1990) (mem.).

In summary, all of these contentions as to the preservation issues have been decided contrary to defendant's position.

## PROPORTIONALITY REVIEW

[27] Defendant contends that his sentence of death should be overturned because it violates the proportionality requirement of N.C.G.S. § 15A-2000(d)(2). That statute provides in pertinent part as follows:

> The sentence of death shall be overturned and a sentence of life imprisonment imposed in lieu thereof by the Supreme Court [1] upon a finding that the record does not support the jury's findings of any aggravating circumstance or circumstances upon which the sentencing court based its sentence of death, or [2] upon a finding that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, or [3] upon a finding that the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

N.C.G.S. § 15A-2000(d)(2) (1988).

After examining the full record, we first conclude that the evidence supports the jury's finding of the aggravating circumstances submitted. We also hold that the record is devoid of any evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

As to the critical task of examining the third element, the proportionality review, we first set out our method for analysis. The Court considers all capital cases tried since 1 June 1977, when our capital punishment statute became effective, in which the defendant received a sentence of death or life imprisonment. *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983). Only cases that were free from error in both phases of the trial are considered. *Id.* We then consider the character, background, and physical and mental condition of the defendant in the case under review as well as the circumstances of the case and the manner in which defendant committed the crime with those same factors of other defendants to establish a pool of similar cases. *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). While we expressly analogize and distinguish many cases,

STATE v. ROPER

[328 N.C. 337 (1991)]

we do not feel bound to cite all cases that we consider. *State v. Williams,* 308 N.C. 47, 81, 301 S.E.2d 335, 356.

In the instant case, the jury found two aggravating circumstances: (1) that defendant had been previously convicted of a crime involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3) (1988); and (2) that the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person, N.C.G.S. § 15A-2000(e)(11) (1988). The jury found all fifteen mitigating circumstances submitted by defendant.[2]

---

2. The jury found as mitigating circumstances:

    1. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

    2. The age of the defendant at the time of this murder is a mitigating circumstance.

    3. Since Mr. Roper's arrest and while awaiting trial in this matter, he has always exhibited good behavior while in the Burke County Jail, has caused no problems while confined therein and has been a model inmate.

    4. That James Edward Roper surrendered to officers of the Burke County Sheriff's Department on these charges and did not offer resistance.

    5. That James Edward Roper is a man with a limited education, to wit: sixth grade.

    6. That the deceased victim was found with a loaded, cocked single-barrel shotgun in his lap with the barrel protruding from an open window.

    7. That James Edward Roper was reared in an economically deprived environment.

    8. That James Edward Roper has provided honest and truthful aid and assistance to the Burke County Sheriff's Department resulting in arrests and convictions for controlled substance violations.

    9. That James Edward Roper's eyewitness, Frank Lester Wyatt, was unavailable for testimony in this trial through no fault of the defendant.

    10. The defendant has a warm and loving relationship with Martha Giles who loves him like a brother.

    11. That James Edward Roper has shared cigarettes, pictures and other jail items with less fortunate inmates at the Burke County Jail while awaiting trial in this matter.

    12. That James Edward Roper has previously been employed as a pulp wood cutter and has worked for Albert Suttle and that he works hard.

    13. That James Edward Roper has a loving relationship with his brother, Dallas Roper.

We first point out that our review is not simply limited to a rebalancing of the aggravating and mitigating circumstances. *State v. McLaughlin*, 323 N.C. 68, 109, 372 S.E.2d 49, 75. We strive to find similarities between the crimes and the character of the defendant with previous cases in which the sentence of death or life imprisonment has been affirmed.

We note at the outset that we do not have other cases where a perpetrator killed with premeditation and deliberation for the purpose of facilitating the rape of another, different victim. Nonetheless, we will first compare the defendant's crime and character to each of the cases where the Court found the sentence of death to be disproportionate. Second, we will compare the defendant's crime and character to the sexual assault cases where defendant received the sentence of life imprisonment. Finally, we will review the particular facts of this case to consider whether the defendant's actions are so aggravated as to warrant the death penalty.

We have held that the sentence of death is disproportionate in seven cases but note that none involved sexual assaults. After an examination of each of the following cases where the death sentence was disproportionate, we conclude that the defendant's actions in the case at bar were more culpable than the actions of the defendants in the cases where the Court found the death sentence to be disproportionate.

In *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988), the defendant was convicted of first-degree felony murder and armed robbery after shooting his robbery victim in the legs with a shotgun. The victim subsequently died of cardiac arrest due to loss of blood from the shotgun wounds. The Court noted that the only aggravating circumstance found in that case was that the crime was committed for pecuniary gain. N.C.G.S. § 15A-2000(e)(6) (1988). In mitigation, the Court further noted, most significantly, that there was no significant history of prior criminal activity and that the defendant was under mental and emotional distress. N.C.G.S. § 15A-2000(f)(1), (2)

---

14. That James Edward Roper has developed a close friendship with Burke County Detective Albert Suttle and Detective Suttle's family within the last four years; and is trusted by Detective Suttle in and around his home and family.

15. Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

(1988). In this case, the defendant was found guilty of murder on both the theories of felony murder and of murder with premeditation and deliberation. Moreover, the jury found two aggravating circumstances, both of which indicate that the defendant was more criminally culpable than the defendant in *Benson.*

In *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987), the defendant was convicted of first-degree felony murder, armed robbery, and felonious larceny as a result of severely beating his robbery victim, which caused the victim's death. In finding the sentence of death to be disproportionate, the Court noted the defendant's young age — seventeen; the mitigating circumstance of mental or emotional disturbance; and the defendant's record of having committed only property offenses and one assault committed as a juvenile. By comparison, the defendant in this case was found guilty of both felony murder and murder with premeditation and deliberation. Moreover, the defendant's record of criminal conduct here included prior convictions for voluntary manslaughter and attempted rape.

In *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds, State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988), the defendant was convicted of first-degree murder with premeditation and deliberation and assault with a deadly weapon with intent to kill. Defendant fatally shot his victim in an apartment building parking lot. The Court noted that the jury found only that the defendant's action was part of a course of conduct involving other violent crimes. N.C.G.S. § 15A-2000(e)(11) (1988). After comparing the crime with other crimes where only that factor was found, the Court reduced the sentence to life imprisonment. In this case, in contrast, the defendant's character was significantly worse, in that the additional aggravating circumstance of previous convictions for crimes involving the use or threat of violence to the person was also found. N.C.G.S. § 15A-2000(e)(3) (1988).

In *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985), the nineteen-year-old defendant was convicted of first-degree murder with premeditation and deliberation, first-degree burglary, and robbery with a dangerous weapon. Defendant and his companions had entered the victim's house on the pretext of a liquor transaction and had stabbed the victim to death. In reducing the sentence to life imprisonment from the death penalty, the Court noted that the jury found only that the crime was committed while the defend-

ant was engaged in a robbery and that the crime was committed for pecuniary gain. N.C.G.S. § 15A-2000(e)(5), (6) (1988). The Court also relied on cases with similar facts where the defendant was given a sentence of life imprisonment. In this case, not only did the crime involve a sexual assault, but the defendant's prior history of criminal activity suggests a more culpable defendant.

In *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984), the defendant was convicted of first-degree murder with premeditation and deliberation for shooting a police officer. The police officer had struggled with the defendant after briefly pursuing him on foot. In reducing the sentence to life imprisonment, the Court noted, among other things, the apparent lack of motive, the apparent absence of any simultaneous offenses, the lack of past criminal activity, and the fact that the defendant was gainfully employed. By comparison, the evidence shows that the defendant in this case was motivated to commit a planned rape and had been convicted of prior felonies.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983), the defendant was convicted of first-degree murder with premeditation and deliberation after he killed a drinking companion. The Court, in reducing the sentence to life imprisonment from death as imposed by the jury, considered, among other factors, the defendant's intoxication, the absence of motive, and most importantly, that the defendant sought medical assistance for his victim. In this case, the evidence shows that the murder was committed in order to allow the defendant to commit a rape. Moreover, the defendant fled the scene, and the evidence shows no effort by the defendant to aid the victim or even check his condition.

Finally, in *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983), the defendant was convicted of first-degree felony murder, kidnapping, and robbery with a dangerous weapon when he shot his robbery victim. The Court noted that only the aggravating circumstance of commission of the crime for pecuniary gain had been found. N.C.G.S. § 15A-2000(e)(6) (1988). In addition, since the defendant was alone with the victim at the time of the crime, there was little evidence of the crime itself. As a result, the Court reduced defendant's sentence to life imprisonment. By comparison, the evidence in this case indicates other, more serious aggravating circumstances. In addition, two witnesses were present, and a jury

decided that the murder was committed with premeditation and deliberation and not in self-defense.

The cases involving sexual assaults that resulted in life imprisonment all are also distinguishable. In two, the presence of at least one significant mitigating circumstance was present which was not present in this case. *State v. Temple*, 302 N.C. 1, 273 S.E.2d 273 (1981) (defendant was eighteen years old, with no record); *State v. Clark*, 301 N.C. 176, 270 S.E.2d 425 (1980) (defendant suffered from schizophrenia). In others, the defendant was only found guilty of felony murder. *State v. Fincher*, 309 N.C. 1, 305 S.E.2d 685 (1983); *State v. Franklin*, 308 N.C. 682, 304 S.E.2d 579 (1983), *overruled on other grounds, State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985); *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). In the instant case, defendant was found guilty of both murder with premeditation and deliberation and felony murder. In *State v. Prevette*, 317 N.C. 148, 345 S.E.2d 159 (1986), the jury did not find the aggravating circumstance, as it did in this case, that the murder was part of a course of conduct in which defendant engaged and which included the commission by the defendant of other crimes of violence against another person. N.C.G.S. § 15A-2000(e)(11) (1988).

We now specifically examine defendant's crime and character to determine if his actions are sufficiently aggravated to support a sentence of death. After considering both his motivation for the killing and his past criminal conduct, we hold that the sentence of death is warranted. The evidence of the crime committed by the defendant indicates that defendant killed Ned Rader to enable him to rape Judy Townsend. Moreover, the State's evidence indicates that the fatal shot was fired with the cold-blooded calculation of an executioner for the sole purpose of facilitating the rape of Judy Townsend. Even Lester Wyatt, defendant's own eyewitness to the murder, indicated an apprehension at the time of the killing that defendant might shoot him as well.

As to defendant's character, we note that the mitigating circumstances found by the jury in defendant's case were numerous; however, only three were statutory, and much of defendant's mitigating evidence related to his conduct after he was in jail and to his relationship with family and close friends. The jury weighed this evidence against the fact that defendant had previously been convicted of a killing in 1971, of a felonious breaking and

entering in 1982, and of a sexual assault in 1985 and the fact that the present killing was accompanied by other serious crimes against another person. After considering the defendant's crime and character, in context, we hold that defendant's actions were sufficiently aggravated to support the sentence of death.

In summary, we have addressed all of defendant's assignments of error after careful review of the record, the transcript of his trial, and the briefs filed herein. We hold that defendant received a fair trial and sentencing proceeding free of prejudicial error, before an impartial judge and jury. The convictions and the aggravating circumstances upon which the sentence is based are supported by the evidence. The sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor and is not disproportionate.

No error.